No. 37,081

ARTHUR LEE ALLEN, CLYDE R. ALLEN, GEORGIA PEARSON and PAULINE A. SAMPLE, *Appellees,* v. SHEILA BURLINGAME, *Appellant.*

(194 P. 2d 913)

Opinion filed June 12, 1948.

*Ben Jones,* of Lyons, argued the cause and was on the briefs for the appellant.

*Rubert G. Martin,* of Lyons, argued the cause, and *Daisy Richards,* of Miami, Fla., was with him on the briefs for the appellees.

The opinion of the court was delivered by

SMITH, J.: This was an action to impress a trust on real estate. The demurrer of one of the defendants to plaintiffs' petition was overruled. She has appealed.

Plaintiffs are the heirs of Edith Allen, the grantor in the trust deed. Defendants are the heirs of Olive C. Maltby and the administratrix of her estate. She was named trustee in the deed of trust. The land involved is an undivided one-half interest in the east eighty acres of a described quarter section.

Prior to January 14, 1902, Edith Allen and Irene Williams, her sister, each owned an undivided one-half interest in a quarter section. On that date Edith and her husband conveyed Edith's undivided interest in this quarter section, together with other real estate, to Olive Maltby, as trustee. This trust deed was duly recorded. Among other provisions, it provided that upon the death of Edith and when her youngest child should become twenty-one the trust should cease and the estate be equally divided among all Edith's children and in the meantime the income should be paid to Edith and in case of her death to her children. The trustee was given power to convey.

Upon this arrangement Olive owned an undivided one-half interest in the quarter section as trustee. Irene Williams owned the other undivided one-half interest.

On September 28, 1904, Olive, as trustee, and Irene made an agreement, the intent of which was that by means of an exchange of deeds Irene would become owner of the entire interest in the west eighty acres and Olive, as trustee, would become owner of the entire interest in the east eighty acres. Olive, as trustee, executed and delivered to Irene a warranty deed to an undivided one-half interest in the west eighty.

The matter causing this lawsuit was that an undivided one-half interest in the east eighty was conveyed to Olive by Irene in person instead of trustee, so that thereafter record title to one undivided one-half interest in it was in her as trustee and the title to the other undivided one-half interest in it was in her own proper person. As so executed and delivered, the deed from Irene to Olive was duly

recorded.· It was the intention of all parties that the above conveyance from Irene to Olive should be subject to the terms and conditions stated in the trust deed. The trust property conveyed furnished the only consideration for the conveyances. Edith never had any knowledge that the deed was taken in the name of Olive rather than that of Olive, as trustee, and plaintiffs did not learn of it until April, 1946.

From January 14, 1902, until her death December 8, 1944, Edith was a resident of Florida and the plaintiffs had been and were at the time the action was filed residents of Flordia. From the date of the trust deed in 1902 Irene and her husband had been tenants of the east eighty and at all times had paid the rent to Olive until her death; and since her death have paid it to plaintiffs. No other person ever claimed any interest in the eighty or to the income therefrom and the resulting trust in it for Edith's benefit has never been repudiated.

Olive died intestate a resident of Florida, June 10, 1925, and left surviving her Sheila Burlingame, her granddaughter, a defendant here, and Edith Allen, the grantor in the trust deed, the mother of plaintiffs, a daughter by adoption, another defendant. These two were her only heirs. No successor to her as trustee was ever appointed. Her estate was duly probated in Florida. Sheila was appointed administratrix of it. Edith Allen died January 14, 1944, leaving the plaintiffs surviving her as her only heirs.

It follows that plaintiffs in this action, if the undivided one-half interest in controversy in the eighty be held subject to the trust, took a beneficial interest in the entire eighty under the trust deed as children of their mother. On the other hand, if the undivided one-half interest be held not subject to the trust, then they took an undivided one-half interest in the eighty under the trust deed as the children of their mother and beneficiaries under the deed, and an undivided one-fourth interest in it as heirs of their grandmother, Olive Maltby. In the former case Sheila Burlingame would take no interest at all in the eighty, in the latter she would take an undivided one-fourth interest as an heir of her grandmother.

The petition set out all the above facts and attached a copy of the trust deed. The trust deed provided, among other things, that on the death of Olive her husband George should become trustee, and in case of his death, any court exercising the powers of an equity court in Rice county, Kansas, or Dale county, Florida, should appoint a new trustee.

The prayer was that the entire interest in the eighty acres in question be adjudicated subject to the terms of the trust deed and that it be impressed with a trust for the benefit of the plaintiffs and that the trust be terminated.

Defendant Sheila Burlingame demurred to this petition on the ground that it did not state facts sufficient to constitute a cause of action against her. This demurrer was overruled and defendant has appealed. Defendant states the sole question is—was the action barred by the statute of limitations?

At the outset it should be noted that no fraud is charged in the petition. The theory upon which the lower court held the demurrer not good was that the trust had never been repudiated, hence the statute had never started to run. Such is the theory the plaintiffs argue in this court. The rule relied upon is that stated in 17 R. C. L., p. 794, as follows:

"If a voluntary trustee does not repudiate the trust, but continues to act under and in harmony with it, the beneficiaries have no right of action against him, and the statute must remain inoperative until the trust is repudiated."

Following that rule plaintiffs point out that from September, 1904, when the faulty conveyance was made, until the death of Olive Maltby, and from then on until the action was brought, all parties had conducted themselves as though Olive owned the entire eighty as trustee. The income from it was paid to Olive by Irene, who was the tenant, and by Olive to Edith, and after the death of Olive directly by Irene to Edith, and after the death of Edith by Irene directly to her children, the plaintiffs—that is, nothing had happened to put either Edith or plaintiffs on notice that the land in question was held in any other manner than by Olive as trustee.

Had the situation been thus when this action was brought and had the action been brought against Olive Maltby, that argument would be persuasive. However, the death of Olive Maltby occurred on June 10, 1925. Her husband had predeceased her. Edith Allen, the grantor in the trust deed, was alive then and lived until December 8, 1944, about nineteen years. During all those years she received the income from this eighty direct from Irene Williams, her sister, who during all the times mentioned was a tenant on the land. What cause of action did Edith Allen have on the death of Olive? In the first place, this duty was fixed by the terms of the trust deed. That instrument provided that in case of the death of Olive Maltby during the existence of the trust her husband George should be sub-

stituted as trustee and in case of his death any court exercising the powers of a court of equity in Rice county, Kansas, or Dale county, Florida, might appoint a new trustee. Neither one of these courts would or could act unless the matter was called to its attention by proper proceedings. (See 15 C. J., sec. 93, p. 797.) The same duty was imposed on some interested party by G. S. 1935, 67-410. That section provides:

"Upon the death of a sole or surviving trustee of an express trust, the same shall vest in the court having jurisdiction thereof, and such court shall forthwith appoint a successor in whom the trust shall vest."

In *Collier v. Blake,* 14 Kan. 251, we held:

"Where the title to real estate in Kansas is held by a person who holds it as a sole trustee of an express trust, and such person dies, the trust immediately vests in the district court of the county in which the real estate is situated, and it is the duty of such court, upon the application of some person interested in the trust, to forthwith appoint a successor to said trustee, and the trust will then vest in the newly appointed trustee."

Edith Allen was an interested party and when Olive Maltby died in 1925, her husband having predeceased her, the obligation was on her to take the proper steps to cause a new trustee to be named. Had she done this the new trustee would have been a voluntary trustee with all the duties and obligations of such. As it was, no such action was taken by anyone, so Sheila Burlingame and Edith Allen, as heirs, succeeded by inheritance to all the title Olive had to the real estate in question. To one undivided one-half of the eighty they took title under the deed from Irene to Olive as a matter of record; as to the other undivided one-half any trust relationship that existed arose by operation of law, not as a matter of contract, but springing from the devolution on them of title to the trust property by the death of Olive and on account of their being her heirs.

The relationship was analogous to the one dealt with in *Norton v. Bassett,* 154 Cal. 411, 97 Pac. 894. There the plaintiffs and O. T. Bassett had all advanced money to purchase real estate. The title was taken in the name of Bassett with the understanding he was to hold it for the benefit of all and was to pay a share of the profits to the plaintiff. While this business was being carried on O. T. Bassett died and C. N. Bassett, his son, inherited the land. After some time the action was brought by plaintiffs asking that a trust be declared in the land in favor of plaintiffs as their interest might appear. The defense of the statute of limitations was interposed. There was no doubt but that a good cause of action to impress a

trust on the land based on the contract between O. T. Bassett was pleaded. The plaintiff relied on the fact that the trust had never been repudiated by either O. T. or C. N. Bassett. The court pointed out, however, that the relationship which C. N. Bassett held toward the property was not that of a voluntary trustee but solely an involuntary one cast upon him by operation of law—a constructive and implied trust. The court said:

"Upon the death of his father and the vesting of the legal title in him as heir, while the property descended to him impressed with the trust, he took it simply as a 'dry, involuntary, legal trustee,' upon whom was imposed no duty except to preserve and protect the trust property, and to account to the beneficiaries for it, and to turn over to them their share of it. As this was the only duty cast upon the defendant Bassett as an involuntary trustee, the plaintiffs' right of action to establish and enforce their claims in the trust property accrued immediately on the death of the voluntary trustee, O. T. Bassett. They were not required to make any demand upon the administrator or the guardian, or upon the defendant Bassett as a prerequisite to maintaining an action for that purpose. Nor was any denial or repudiation of the trust by any of these persons necessary in order to set the statute of limitations in motion. As plaintiffs' right of action accrued on the death of the voluntary trustee, the elder Bassett, and the vesting of the title to the trust property in the defendant Basset as an involunary or constructive trustee, the statute then commenced to run, and, unless an action was brought by the plaintiffs within four years thereafter, their right to maintain it was barred."

This opinion is persuasive here. Defendant Burlingame owed no contractual duty toward the trust property or the plaintiff. It was not until the death of Olive, her ancestor, that she owed any duty toward it at all, then only what interest she inherited from Olive. As we have demonstrated, the duty devolved upon Edith as beneficiary under the trust deed to cause the appointment of another trustee to succeed Olive. Since she did not take this action, the cause of action to impress a trust upon the one undivided one-half interest arose immediately upon the death of Olive, the voluntary trustee. The statute of limitations commenced to run then. It was not necessary that there be a repudiation. (See 34 Am. Jur., 88; also, *Hart v. Bank*, 105 Kan. 434, 185 Pac. 1; also, *Kerber v. Rowe*, 348 Mo. 1125, 156 S. W. 2d 925.) It is true the petition does not allege that Edith had any knowledge of the irregularity in the conveyance from Irene to Olive. A reasonable inference from the pleadings is, however, that she knew of Olive's death since she lived near her in Florida and Olive was her foster mother. She did know of the provisions of her own trust deed and

is presumed to know the provisions of the statute. Had she taken the proper steps to cause the appointment of a succeeding trustee as the trust deed and statutes provided there would have been a new voluntary trustee and the statute would not have commenced to run until that trustee had repudiated the trust. These plaintiffs are all the heirs of Edith Allen, the grantor and beneficiary in the trust deed. They took what interest she had in the real estate and no more.

Since the cause of action accrued June 10, 1925, and this action was commenced February 11, 1947, it is barred by the statute of limitations, R. S. 1935, 60-306, *third*.

The judgment of the trial court is reversed with directions to sustain the demurrer of Sheila Burlingame.

COWAN, J., not participating.