No. 41,936

LULU L. RATHBUN, CLEO R. RATHBUN, GLEN R. RATHBUN, BOBBY DALE RATHBUN, JACK C. RATHBUN, and RUBY F. MORGANFIELD, *Appellants,* v. HELEN DALE HILL, otherwise known as Helen D. Hill and formerly Helen Dale Rathbun and her husband, R. C. HILL; ANNA MIDDLESWART, otherwise known as Anna J. Middleswart; and ANNA JUANITA MIDDLESWART, formerly Anna Juanita Rathbun, an unmarried woman, *Appellees.*

(354 P. 2d 338)

Opinion filed July 22, 1960.

*Lee Hornbaker,* of Junction City, and *George D. Miner,* of Ellsworth, argued the cause, and *Paul L. Aylward,* of Ellsworth, was with them on the briefs for the appellants.

*John V. O'Donnell,* of Ellsworth, argued the cause, and *Sidney J. Brick, Fred A. Beaty, W. A. Bonwell, Jr., Yale W. Gifford,* and *Richard Rumsey,* all of Wichita, and *V. E. Danner,* of Ellsworth, were with him on the briefs for the appellees.

The opinion of the court was delivered by

ROBB, J.: This is an appeal from the judgment of the trial court quieting title in the defendants to a certain section 31 of land in Ellsworth county (hereafter more fully described), barring plaintiffs from claiming ownership of such land, and overruling plaintiff's motion for new trial.

In an effort to make clear how the present parties are related to George R. Rathbun, testator, and the provisions of his will here involved, we set out the following diagram designating them by their first names:

George, testator, and Mary, his wife

- section 31, tract A to H. R. life estate → Helen, Anna } daughters, defendants-appellees
- tract B to M. W. life estate, executor and trustee named in George's will → children of M. W. with whom we are not concerned
- tract C to M. M. life estate, executor and trustee by George's will → Lulu, widow; Cleo; Glen, Bobby, Jack } sons; Ruby, daughter } plaintiffs-appellants

George's specific bequests to his four other children are not of concern here.

George died on April 10, 1925, leaving as his survivors Mary, his wife, and their seven children, as indicated. George's will devised specific land bequests to each child who was required to pay the taxes, any mortgages, liens, or other claims against his particular land. None of the land devised to one child would be liable for debts against the land of any other child. The children were to make a definite annual payment of fifty cents per acre on all the land to Mary during her lifetime.

The trial court made very comprehensive and complete findings of fact and pertinent portions thereof will be set out. The parties agreed upon and stipulated to the fact as to certain detailed matters reflected in the following findings:

The action was commenced on September 20, 1956. The land in controversy which was the subject of the action was all of section 31, township 16, south of range 8, west of the 6th P. M. in Ellsworth county. Prior to his death on April 10, 1925, George owned the land and thereafter his will was admitted to probate in the probate court of Ellsworth county. M. M. and M. W. were appointed and duly qualified, and letters testamentary were issued to them as executors of the will. On June 12, 1926, the estate was closed and said executors were discharged.

After April 10, 1925, M. M. occupied, cultivated and farmed approximately forty of the 640 acres of the land as a tenant of the life tenant, H. R., until September 21, 1932, and thereafter he paid no rent to anyone on the forty acres and continued in possession until his death.

Until the fall of 1929, the other 600 acres consisting of pasture were rented to C. A. Gregory for $600.00 a year which was paid to George prior to his death and on September 28, 1926, was paid to George's estate. Thereafter and on the dates of October 27, 1927, October 9, 1928, and October 24, 1929, the rent was paid to M. M. From October 24, 1929, until September 21, 1932, M. M., as a tenant of H. R., the life tenant, occupied the 600 acres of pasture and after September 21, 1932, M. M. paid no rent to anyone and continued in possession thereof until his death.

On December 11, 1923, George and Mary, his wife, had executed a first mortgage on the land to secure the payment of their note of $3,000 which existed and remained unpaid of record as a lien at George's death. On May 15, 1930, the mortgagee brought an action against Mary, and others, to foreclose the mortgage, which was foreclosed and the land was ordered sold to satisfy the judgment. At 2:00 p. m. on October 31, 1930, the sheriff at a public sale sold the land to M. M. for $3,401.17, a certificate of purchase was issued to him and the sale confirmed on November 22, 1930, with eighteen months for redemption granted. The land was not redeemed and on September 21, 1932, a sheriff's deed was issued to M. M.

On November 14, 1940, M. M. died intestate. Administration of his estate was duly had and completed in the probate court of Ellsworth county including the land in question which on April 3, 1942, was assigned and vested in the plaintiffs as M. M.'s heirs at law whereby plaintiffs in this action claim the land.

On December 8, 1931, Helen became twenty-one years of age and Anna did likewise on November 23, 1934. These defendants are the only lawful children or issue of H. R. On May 1, 1952, H. R. died intestate, a resident at all times material herein of Fowler, Meade county. His estate has never been probated.

On August 22, 1928, Mary died and during the time from George's death to hers and in accordance with George's will, she was paid the fifty cents per acre on the land in question by her agent, M. M.

The following summarized findings of facts were made by the trial court from the evidence:

On September 21, 1932, a sheriff's deed was issued to M. M. and recorded by him on September 21, 1932, in the register of deeds' office. Helen and Anna claim title to the land as devisees under George's will as the lawful, living issue of H. R. on May 1, 1952.

With respect to George's will, the trial court found that on May 8, 1925, George's will was admitted to probate and a certified copy thereof was admitted and recorded on May 16, 1925. Under George's will a life estate in the land was devised to the testator's son, H. R., subject to a charge of fifty cents an acre due on January 1 of each year after George's death until Mary's death. At H. R.'s death the land was "granted" to the living, lawful issue of H. R., share and share alike, and to their heirs and assigns forever, with the provision that the devise should not take effect so as to vest title in such issue until the youngest reached twenty-one years of age, and should any of such issue of said son die before the youngest of said issue reached the age of twenty-one years, leaving issue, such issue should take the parent's share.

George's will further provided that if at his death there should exist any mortgage or lien against any of the real estate devised therein to the issue of any of George's children, the same should be chargeable to the real estate against which the mortgage or lien existed and should not be chargeable or payable out of any other real estate.

George named M. M. and M. W. as trustees under the will with full powers, if any of George's children or their issue should fail to pay Mary the fifty cents an acre, pay taxes, liens, or encumbrances against the real estate, to take full and complete charge and control of the real estate upon which the payment was in default, to rent and manage the real estate so that the default payments should be fully paid whereupon the real estate should be returned to the party entitled to possession thereof under the will. Further, in the event of the death of any of George's seven children, leaving issue, the youngest not being twenty-one years of age, the trustees were empowered and directed to take charge and control of the real estate devised in the will to such issue for the benefit of all of such issue and retain control until the youngest issue reached twenty-one years of age and after paying all proper charges and liens against the real estate and their own charges, they were to use the remaining income for the benefit of the issue of the deceased child, giving and paying for the benefit of each issue such sum as they deemed wise and proper and for good cause withholding all income from anyone or more of the issue.

Further, upon death, disability or refusal of either M. M. or M. W.

to act, the other should have full powers that both could exercise in case both acted.

At this point the trial court's findings, based primarily on conflicting evidence which was principally documentary, were that in the mortgage foreclosure action all of George's children, as individuals with their respective spouses and unknown heirs, executors, administrators, devisees, trustees, and assigns, M. M. and M. W. as trustees, under George's will, if so acting, or if discharged, their unknown successors, etc., were named as defendants. Personal service was obtained on M. M., M. W., H. R., and other defendants individually, and on M. M. and M. W. as trustees under George's will.

M. M.'s only surviving heirs were the plaintiffs, of which Cleo was appointed administrator on November 29, 1940. He took possession of and caused the land in question to be appraised on December 31, 1940, and returned for inheritance tax as an asset of M. M.'s estate. On March 2, 1942, Cleo filed a petition for final settlement and determination of descent, alleging that at his death, M. M. owned the land. On April 3, 1942, an order was entered decreeing M. M. the owner and the descent of his estate to plaintiffs.

Defendants Helen and Anna, daughters of H. R., had no knowledge or notice of any kind, other than that afforded by admitted exhibits A through F and the legal actions included therein, that M. M., Cleo as administrator, or the plaintiffs, were claiming title to the land adverse to Helen and Anna, or that they or any of them held possession thereof exclusive of or adverse to Helen and Anna or under a claim of title to the land other than as trustee or trustees under George's will or as successors or assigns of such trustee or trustees.

Helen and Anna first knew of the specific provisions of George's will on May 1, 1952, at the time of H. R.'s death.

There had been no formal acceptance of the trust. M. M. paid Mary the annual fifty cents per acre charge imposed on the land and paid the taxes both before and after the foreclosure sale.

In 1931 M. W. rented the 600 acres of pasture and M. M. told him to pay the rent money directly to H. R., life tenant, and it was so paid. M. M. generally looked after and cared for the land from the time of George's death until his own death, renting portions at times to others, collecting rentals, delivering rental monies prior to Sep-

tember 21, 1932, and operating and farming a portion thereof himself.

M. W. did not act or perform any duties as trustee under George's will with respect to the land in question. He survived M. M. and was living when this action was instituted. Neither H. R., Helen, nor Anna had any knowledge that M. W. did not intend to or did not accept and assume the duties and responsibility of successor trustee of the land under George's will.

The conclusions of law of the trial court follow:

"1. The will of George R. Rathbun created an express trust with M. M. Rathbun and M. W. Rathbun, or the survivor of them in case of the death or disability or the failure to act of either of them, as trustee.

"2. The acts of M. M. Rathbun in paying the charges imposed upon the land which is the subject of this action for the benefit of the testator's widow to said widow, in paying the taxes on said land, in holding possession thereof, in renting the pasture portion of said land and receiving the rents therefrom after the closing of George R. Rathbun's estate, in directing the payment of the pasture rent for 1931 to the life tenant, and in generally looking after and caring for said land, all after the closing of his father's estate and his discharge as executor thereof, constituted an acceptance of trusteeship under the provisions of the will of George R. Rathbun, and constituted an actual performance of the trust provisions of said will as trustee.

"3. M. M. Rathbun, being trustee under his father's will and in possession of the land in question as such trustee, was charged with the duty to protect the title and possession of the life tenant and the remaindermen, the defendants herein, and could not by a purchase at the sheriff's sale in the foreclosure action obtain title in his own name for his own use and benefit; he could only obtain a legal title for the purposes of fulfilling the trust obligation and for the use and benefit of the life tenant and remaindermen. By such purchase he obtained for himself only the legal title, and the act of purchase constituted a further performance of the trust obligation under the will, and in so purchasing he was acting as trustee and thereafter he, his administrator and the plaintiffs herein held the legal title for the benefit of the life tenant, H. R. Rathbun, and the remaindermen, the defendants herein.

"4. Under the sheriff's deed of the subject land issued to M. M. Rathbun in the foreclosure action title to said land was taken by him in trust for the life tenant and the remaindermen.

"5. Being a tenant of H. R. Rathbun, the life tenant, at the time he purchased the subject premises at the sheriff's sale on October 31, 1930, and at the time he received the sheriff's deed thereto on September 21, 1932, M. M. Rathbun could not deny the title of his landlord, the life tenant. He was in privity with the life tenant and did not by said purchase acquire a title to the land adverse to the life tenant or the remaindermen.

"6. By purchasing at the foreclosure sale M. M. Rathbun became a creditor of the trust estate in the amount necessary to relieve the land of the encumbrance; he acquired a lien to that extent on the reversionary interest.

"7. Plaintiffs obtained from their father, M. M. Rathbun, through the probate proceedings relating to his estate in the probate court of Ellsworth County, Kansas, only the title held by M. M. Rathbun and nothing more; they took the legal title subject to the trust and subsequently held it only for the benefit of the life tenant and remaindermen.

"8. The possession of M. M. Rathbun or Cleo R. Rathbun, administrator of the estate of M. M. Rathbun, deceased, or the plaintiffs herein, was not open and notorious as against the defendants herein, nor exclusive of them or adverse to them.

"9. The notice to the defendants afforded by the legal proceedings in the foreclosure action and in the administration of the estate of M. M. Rathbun, and in other legal proceedings admitted in evidence herein, did not constitute notice to them of an adverse or exclusive holding of the real property involved herein as against said defendants.

"10. The applicable statute with respect to limitation of actions did not begin to run against the life tenant or the remaindermen at the time of the purchase of the subject real estate in the foreclosure action by M. M. Rathbun, nor at the time of the issuance of the sheriff's deed thereto to him. Neither did it begin to run against said parties upon the death of M. M. Rathbun or upon the filing of the petition for administration of his estate, upon the appointment of the administrator, upon the inventory and appraisement of the property in said estate or at the time of any of the interim proceedings in the administration of said estate prior to the closing thereof. Had it begun to run upon the closing of said estate on April 3, 1942, or upon the happening of any subsequent event such as the death of the life tenant, it would not have expired at the time of the filing of either the petition or the answer and cross-petition in this action. It did not begin to run in 1934 when the youngest of the plaintiffs became of age, since the life tenant and the trustee, M. M. Rathbun, were then alive. The cause of action stated in defendants' cross-petition is not barred.

"11. Defendants, having had no actual notice of any claim of plaintiffs adverse to them until the filing of this action, are not chargeable with laches.

"12. Judgment should be entered herein that the defendants be adjudged to be the owners in fee simple of the subject real property; that plaintiffs have no right, title or interest therein except that said plaintiffs have a lien thereon for such sums as they or M. M. Rathbun, during his lifetime, or his administrator after his death, paid for taxes or in payment of charges thereon or to discharge encumbrances thereon, or as expenses of operation thereof or for improvements thereon not chargeable to them personally, together with interest thereon less the reasonable value of their use and occupancy of said land; that the defendants be restored to possession of the real property which is the subject of this action and their title thereto quieted in them as against plaintiffs and all persons claiming by, through or under them or any of them, and that the costs of this action are assessed to plaintiffs; that it be further ordered that the issues raised by defendants' pleadings and prayer for an accounting by plaintiffs herein be set for hearing on a date later to be determined for the purpose of receiving evidence thereon exclusively and for determination by the Court."

Five questions are presented by plaintiffs.

No. 1. Were M. M. and M. W. ever voluntary trustees under the terms of George's will?

Briefly, plaintiffs argue that the will vested no title in M. M. and M. W. as trustees, and only in certain contingencies were they to take complete charge and control of the real estate so as to pay charges and liens, if possible, from the rent and operation of, as here, section 31. They further argue that M. M. and M. W. would thereby have ousted all others from control of the land. However, as defendants argue, George's will contained the further provision that after the rents and income had fully paid all charges and liens against section 31, then it had to be returned to the party entitled to possession thereof under the terms of George's will.

We think it important to note the following three provisions of George's will:

"If in case of my death, there shall exist any mortgage or lien against any of the real estate devised herein to the issue of any of my children herein named, the same shall be chargeable against the land against which the mortgage or lien exists and shall not be chargeable or payable out of any other land. I hereby appoint as executors under this will my sons M. M. Rathbun and M. W. Rathbun and request that neither be required to give any bond as executor or trustee."

· · · · · · · · · · · ·

"I hereby make and constitute my two sons M. M. Rathbun and M. W. Rathbun trustees under this will and do hereby give them full power in case any of my children or their issue shall fail on the 1st day of January of each year after my death to make payments as in this will provided to my wife Mary J. Rathbun, or shall fail to pay the taxes on the land a life estate in which is devised to any child herein, or shall fail to pay the liens or encumbrances against the real estate chargeable with same under the terms of this will, to take full and complete charge and control of the said real estate so chargeable and on which there shall be a default in the said payments, with full power to rent and manage such real estate, so, if possible all charges and liens against same shall be fully paid after which the said real estate shall be returned to the party who shall be entitled to the possession thereof under the terms of this will."

· · · · · · · · · · · ·

"If at the date of my death I shall own any real estate other than the real estate herein described, I give and devise the same to M. M. Rathbun, and M. W. Rathbun, in trust however, to sell and dispose of the same and divide the proceeds from the sale thereof equally, and share and share alike, among my said seven children herein named, the issue of any deceased child to take the parents' share, and in case of the death of any of my said children without issue, the share that such deceased child would have if living, shall be equally

divided among my remaining living children, the issue of any deceased child to take the parents' share."

It is apparent in the first above-quoted paragraph how George wanted mortgages and liens charged against the land. He appointed M. M. and M. W. as executors to serve without bond and for the first time in relation to their serving without bond, the word "trustee" is used. No specific power was granted to M. M. and M. W. *as executors* to pay Mary her annual fifty cents per acre, or to pay the taxes, or any liens against section 31. However, we find definite directions as to how such exigencies were to be eliminated in the second-quoted provision where George appointed M. M. and M. W. *as trustees* and gave them the power to pay and also prescribed how reimbursement should be obtained and upon full satisfaction thereof, section 31 was to be returned to the party entitled to possession thereof under the will. This was an express trust conveyance for a particular purpose which could affect one or all of the survivors except Mary.

In the third and last-quoted paragraph of the will regarding accumulations after the will was drawn and before George's death, George again named M. M. and M. W. as trustees to dispose of such accumulations and this constitutes another express trust conveyance for a particular purpose which could affect all of the survivors except Mary.

As concluded by the trial court, neither M. M. nor M. W., jointly or severally, made any formal written acceptance of the trust nor did either of them obtain a court order of appointment or take an oath as trustee.

On May 8, 1925, after George's death, M. M. was in possession of and farmed forty acres of section 31 and since as executor under the will he had no power to take possession, he was, as stipulated by the parties, a tenant of H. R., the life tenant. While M. M. and M. W. were admittedly co-executors, the uncontradicted testimony of M. W. was that he was totally inactive and passive and that M. M. was the only one who carried out any of the duties of trustee prescribed in George's will. Between George's death and the time of the probate court order settling his estate on June 12, 1926, these activities occurred: Income was received by M. M.; ad valorem taxes were paid; the annual payment of fifty cents per acre on section 31 was made to Mary; and interest was paid on the mortgage

indebtedness. These were duties devolving upon the trustees and not the executors by the particular provisions of George's will.

Plaintiffs base their answer to the first question on the following general proposition of law from 1A Bogert on Trusts and Trustees, Chapter 9, § 150, pp. 55, 56:

"The cases fully sustain the position that a trustee named in a deed or will always has the election of accepting the trust or rejecting it. No one can be compelled to undertake the burdens of trusteeship against his desire. Thus, acceptance of a trust is necessary in order to the commencement of a trusteeship with a particular trustee acting in the representative position. And if for some unusual reason, the settlor has expressed an intent that the trustee nominated is the only trustee qualified, it can truthfully be said that acceptance of the trust by that trustee is necessary to the creation of that particular trust."

Bogert acknowledges there are too many divergencies in the cases involving acceptance or disclaimer. In addition to that portion relied on by plaintiffs, Bogert in the same section adds:

"The acceptance by the trustee may be shown in a great variety of ways. There seems to be no duty on the trustee's part to express the acceptance in a formal direct way. . . . And so taking control of the trust property, and *performing any act with regard to the trust property* or persons *which could not lawfully be performed except as trustee,* are strong evidence that the trustee has acquiesced in the trusteeship. Acts of the latter type include the sale, rental, or mortgaging of the trust property, and the collection of rent, coupons, or dividends. Where the same person is named executor and trustee by the same will, acceptance and qualification as executor may well show an implied acceptance of the trust as well; the duties of the two offices being closely related." (Our emphasis.) (pp. 57-59.)

The case of *Blake-Curtis v. Blake,* 149 Kan. 512, 89 P. 2d 15, held:

"In an action to construe a will, where it appears that the powers and duties given a person named as executor require that he should take an estate and act as a trustee, the intention of the testator will be presumed, and an estate will vest by implication even though there is no express devise to a person named as trustee." (Syl. ¶ 1.)

Turning to the opinion in the Blake case we find the will there under consideration, unlike George's will, did not contain an express trust provision. The Blake will read:

" 'I further devise and direct as follows, to wit: That my ranch in Grant county, Kansas . . . together with all improvements thereon, I direct that my executor take immediate charge and control of said ranch in its entirety, preserve the same, make new loans if necessary to pay off any loan or loans existing at my death, and to manage in all respects the same to the best advantage of my heirs. . . .' " (p. 522.)

The above makes our case the stronger of the two and the rules applicable there are controlling here. The Blake case restated a

portion of the opinion in *Johnson v. Muller*, 149 Kan. 128, 133, 86 P. 2d 569, as follows:

"And finally, appellants question the holding of the trial court that a trust was created by the will. It is true there was a failure on the part of the testator to specifically devise the property to the trustees, but that he prescribed the powers and duties of the trustees is clear." (p. 521.)

The following familiar rule was then restated:

"Where there is no express devise to the trustee, it must appear that the testator intended he should take an estate, and where from the nature of the duties to be performed, it appears that the taking of an estate is necessary, the intention of the testator will be presumed; and when the intention is clear, an estate in the trustee will vest by implication." (p. 521.)

The Blake case also quoted from *Grossenbacher v. Spring*, 108 Kan. 397, 398, 399, 195 Pac. 884, as follows:

" 'If the trustee has no duty to perform towards this estate, the trust has become passive, otherwise it is active. Here the grandchildren are only to receive the net income, and it is to be paid to them annually. It is therefore the duty of the trustee to manage this estate so that it will produce an income. It is necessarily his duty to preserve the estate from waste, to rent or otherwise render the estate productive of income, to pay the taxes, to conserve the property for the benefit of those lawfully entitled to receive the remainder estate upon its division after the death of all the grandchildren. Obviously these are the duties of the trustee. By necessary implication, the powers and duties of a trustee are of whatever scope is requisite for the effective execution of the purposes of the trust. . . . And these are duties calling for action, not passive inaction.' " (pp. 521, 522.)

In the Blake case, as here, the testator had a definite idea as to just what he wanted—which was a trust—but the testator's wish was more pronounced and apparent in our present case than in the Blake case where the court, in construing the will, stated:

"The language used in designating a person to do certain things in a will is not alone controlling. The real test is the powers and duties actually given him when all the provisions of the will are considered. If the powers and duties of a trustee are created by the will then he is a trustee, no matter what he may be called." (p. 523.)

Under the provisions of George's will and the foregoing authorities, it can only be concluded that on April 10, 1925, the date of George's death, M. M. and M. W. became co-trustees of an express trust with reference to section 31 to take complete possession and control, to rent, collect rentals, and produce whatever income they could to pay Mary her annual fee, and to pay the taxes, interest on the mortgage indebtedness, liens, and other charges against the

land. They were to continue to retain such possession and control until reimbursed for whatever they had expended and then were to convey back according to directions given them in the will. Thus the requisites of a trust under *Shumway v. Shumway,* 141 Kan. 835, 44 P. 2d 247, were more than satisfied. (See, also, *Niblack v. Knox,* 101 Kan. 440, 445, 167 Pac. 741.)

The second question is, Did M. M. become the owner in fee simple of section 31 by purchase at the foreclosure sale upon delivery of the sheriff's deed to him?

In commenting upon relationships of individuals when acting in certain capacities that are so closely akin to each other, this court has said that it is a general rule of law that executors, administrators, guardians, trustees, and functionaries of that general character, may not traffic to their own private advantage in estates or properties towards which they have any official or moral responsibility. This rule is as much a principle of ethics and of practical honesty as it is of law. (*Alumbaugh v. Hedges,* 125 Kan. 449, 265 Pac. 50.) A simple but cogent statement in regard to the moral philosophy underlying the above rule was restated in the Alumbaugh decision:

"So jealous is the law upon this point, that a trustee may not put himself in a position in which to be honest must be a strain upon him." (p. 453.)

We shall briefly summarize a portion of the foreclosure proceeding had on section 31:

The mortgagee's petition alleged that M. M. and M. W. according to George's will were appointed trustees to act under certain circumstances, but it was not known if they were so acting. However, in the prayer, judgment was sought against them in such trustee capacity "if still so acting." No pleadings were filed by any of the defendants and a default judgment of foreclosure was entered on September 6, 1930, against all defendants including "M. M. Rathbun and M. W. Rathbun, Trustees under the last will and testament of George R. Rathbun, deceased, if still so acting," from which no appeal was ever taken. M. M. bought and paid for the property at the sheriff's sale which was confirmed on November 22, 1930, and an eighteen months' redemption period was granted. No redemption was made and in due course a sheriff's deed was issued to M. M. on September 21, 1932, and recorded on the same date.

A similar situation was presented to this court in *Miller v. Henderson,* 140 Kan. 46, 52, 33 P. 2d 1098, wherein Miller and Henderson were partners in producing oil from a leasehold estate. Miller

died testate and named his widow as executrix, but directed that Henderson should have full power, with the approval of the executrix, to do everything for the best interests of Henderson and the Miller estate until the business was closed up and the property disposed of. Henderson was further directed to account to and pay the executrix the proceeds from the operation and sale of the property as they accrued. Henderson operated the property and accounted to the executrix for a period of time but he allowed federal income taxes to become delinquent on the Miller interest whereby it was sold and he bid it in and caused the conveyance to be made to one Holden. The decision in effect was that once a fiduciary or confidential relationship existed, Henderson was unable to do for Holden that which he could not do for himself with the result that the injured party had to be restored to his rights.

Applying the above theory to our present case, the conclusion is inescapable that the express trust created by George's will to take effect at his death, along with M. M.'s operating thereunder, established an active voluntary fiduciary or confidential relationship and M. M. could not purchase for himself a fee simple title in section 31 at a public sale, nor could he do so for anyone else, if such was his purpose. The ultimate result is that, as was also concluded by the trial court, M. M. did not have the capacity to become the owner in fee simple of section 31.

The appropriate rule covering this subject is found in *Vincent v. Werner*, 140 Kan. 599, 38 P. 2d 687, where the rule stated in *Magruder v. Drury*, 235 U. S. 106, 119, 59 L. Ed. 151, 156, 35 S. Ct. 77, is restated thus:

"It is a well-settled rule that a trustee can make no profit out of his trust. The rule in such cases springs from his duty to protect the interests of the estate, and not to permit his personal interest to in anywise conflict with his duty in that respect. The intention is to provide against any possible selfish interest exercising an influence which can interfere with the faithful discharge of the duty which is owing in a fiduciary capacity. 'It therefore prohibits a party from purchasing on his own account that which his duty or trust requires him to sell on account of another, and from purchasing on account of another that which he sells on his own account. In effect, he is not allowed to unite the two opposite characters of buyer and seller, because his interests, when he is the seller or buyer on his own account, are directly conflicting with those of the person on whose account he buys or sells.' *Michoud v. Girod*, 4 How. 503, 555." (p. 607.)

Since there was an express trust we shall not labor the case with discussions of tenants, life tenants, or constructive or implied trusts.

The third question asks, Was the trusteeship of M. M. terminated (*a*) by him in his lifetime, which we think has been sufficiently answered in the negative, and (*b*) by his death?

Plaintiffs rely on *Allen v. Burlingame,* 165 Kan. 294, 194 P. 2d 913, in support of their argument that at the time of the death of M. M. on November 14, 1940, the two year statute of limitations (G. S. 1949, 60-306, *Third*) commenced to run, with the result that Helen and Anna could not obtain the relief sought in their cross-petition dated November 14, 1956. While an express trust was involved in the Allen case, a careful comparison of the two cases shows vast dissimilarity.

In the Allen case, Edith and Irene, sisters, each owned an undivided one-half interest in 160 acres of land. Edith, by a duly-recorded trust deed, named Olive as trustee of her undivided one-half interest with power to convey. George, Olive's husband (who predeceased Olive) was named as successor trustee. Upon George's death, any equity court of Rice county, Kansas, or Dale county, Florida, was to appoint a trustee. Two years subsequent, by agreement between Olive and Irene, and by means of a transfer of later-recorded deeds, Olive received a deed from Irene to an undivided one-half interest in the east eighty acres of the original 160, in her own individual right. The result was that Irene was owner of the fee simple title to the west eighty and Olive held an undivided one-half interest as trustee as well as an undivided one-half interest in fee simple in her own right to the east eighty. Edith had been the beneficiary, as well as the settlor, in the trust deed and after her death, the fruits of the trust were to go to her children. Irene was tenant of the entire 160 acres, and she paid the rent to Olive, who, until her death, paid it over to Edith. Thereafter Irene paid the rent to Edith and later to Edith's children. The gist of the action brought by Edith's children was to *impress a trust* on the undivided one-half interest taken by Olive in her individual capacity.

This court, in holding that the petition in the Allen case failed to state facts sufficient to allege a cause of action, emphasized the proposition that Edith, the settlor and first beneficiary under the trust, was fully aware of the consideration thereof, survived the trustee by fourteen years, had the additional knowledge that the named successor trustee had predeceased the trustee, and still failed to comply with the terms of her own trust by petitioning one of the named equity courts to appoint a successor trustee within

two years when it was her duty so to do. We think the differences between the cases are apparent and the greatest difference is that in the Allen case there was a constructive trust, which had to be impressed upon the undivided one-half interest in the east eighty that was obtained by Olive from Irene, while here we have a testamentary express trust. A second noticeable distinguishing feature in the Allen case is the emphasis placed by this court on the death of the successor trustee prior to the trustee. Otherwise, from the language of the court and the following general rules restated in the opinion, plaintiffs might have been able to impress the constructive trust against the successor trustee:

"If a voluntary trustee does not repudiate the trust, but continues to act under and in harmony with it, the beneficiaries have no right of action against him, and the statute [of limitation] must remain inoperative until the trust is repudiated." (p. 297.)

"Upon the death of a sole or surviving trustee of an express trust, the same shall vest in the court having jurisdiction thereof, and such court shall forthwith appoint a successor in whom the trust shall vest." (p. 298.)

In other words, it could be inferred from the opinion in the Allen case that had Olive's husband survived her, the interest conveyed from Irene to Olive, as an individual instead of as trustee, was subject to and could have been impressed with a constructive trust. We shall not discuss the legal reasoning of the Allen case herein because, as above stated, it is not controlling. Thus, we must conclude that M. M.'s death did not terminate the express trust created by George's will.

The fourth question as to whether M. W. was trustee after the death of his brother M. M. has already been answered in the affirmative. This brings us to the fifth and final question, What is the proper limitation of an action to declare and enforce a trust?

This may be referred to as a double-barreled question but we shall say that this is an action to enforce the specific performance of an active and voluntary express trust, to quiet title, for an accounting, and for return of part or all of the tender made by Helen and Anna, together with whatever other amount the accounting will show to be due them.

Helen and Anna, as vested remaindermen, had no cause of action until the life estate of their father, H. R., expired. We have already shown that M. M. who had full knowledge could not have been an innocent purchaser and that he did not have capacity to purchase any more at the foreclosure sale than he had under the express trust

in George's will. Thus no statute of limitations was put into operation thereby. The terms of the express trust were voluntarily carried out by the trustees, even to the interest payments on the note and mortgage securing the same until March 1, 1930, and placing a proper interpretation rather than an improper one on M. M.'s action, the purchase at sheriff's sale was a further compliance with the terms of the express trust and did not constitute actual notice to H. R., Helen, or Anna that M. M. had repudiated the trust. M. M., plaintiffs, and M. W. under the law and also by the terms of George's will have a lien against section 31 for any amounts of money expended by M. M. or M. W. in carrying out the trust, but as soon as they are fully reimbursed, the title will have to be given back to Helen and Anna in equal shares since H. R. is deceased and they are both more than twenty one years of age.

Since H. R.'s preceding life estate had terminated, Helen and Anna could properly maintain an action of ejectment, complete their title from vested remaindermen to full enjoyment of possession and fee simple title, and for an accounting. They took such action in less than two years and there is no running of a statute of limitation in this case and we do not feel inclined to determine any other statute of limitation situation than the one now before us.

For purpose of emphasis we now quote the language of our legislature treating such close fiduciary relationships as the one here existing. G. S. 1949, 67-405 reads:

"Every sale, conveyance or other act of a trustee in contravention of a trust shall be void."

The following cases particularly at those pages noted are additional appropriate authority to that already cited herein: *Wiswell v. Simmons,* 77 Kan. 622, 628, 95 Pac. 407; *Hudson v. Herman,* 81 Kan. 627, 640, 107 Pac. 35; *Hunnicutt v. Oren,* 84 Kan. 460, 468, 114 Pac. 1059; *Gibson v. Hornung,* 110 Kan. 211, 213, 203 Pac. 730; *Allbert v. Allbert,* 148 Kan. 527, 532, 533, 83 P. 2d 795; *Bayless v. Wheeler-Kelly-Hagny Trust Co.,* 153 Kan. 81, 88, 89, 109 P. 2d 108; *Meyer v. Rogers,* 173 Kan. 124, 130, 244 P. 2d 1169; *Murray v. Brown,* 177 Kan. 139, 140, 141, 276 P. 2d 344; and *Commercial National Bank v. Martin,* 185 Kan. 116, 340 P. 2d 899.

Other interesting subjects advanced by the parties have been considered but since they are not necessary to a determination of the questions presented, we shall not discuss them.

Judgment affirmed.