(643 P.2d 1094)
No. 52,965

Vernon Pizel, *et al., Appellees,* v. Allen D. Pizel, *et al.,*
*Appellants.*
Petition for review denied June 28, 1982.

Opinion filed April 1, 1982.

*B. E. Pete Whalen* and *Jerry D. Fairbanks,* of Whalen & Fairbanks, P.A., of Goodland, for appellants.

*Randall W. Weller,* of Jones, Weller & Elliott, of Hill City, for appellees.

Before Abbott, P.J., Swinehart and Meyer, JJ.

Meyer, J.: This is an appeal from a summary judgment for plaintiffs (appellees), quieting title to real property in favor of

appellees, as takers under a will, as against defendants (appellants), who claimed the subject real estate as beneficiaries under a purported trust.

Charles Pizel was a lifelong resident of Sherman County, Kansas; he died in that county on April 24, 1979. He was never married and had no children; his only heirs at law were nephews and nieces. At his death, Charles Pizel had accumulated a sizeable estate.

Charles Pizel evidently undertook to plan his estate, at least partially, in the spring of 1962, with the advice and assistance of Eugene P. Zuspann, an attorney in Goodland, Kansas. On May 23, 1962, Charles Pizel executed a document entitled "Charles Pizel Revocable Trust." That document provided that Charles Pizel was the settlor; the trustees were Charles Pizel, Wilfred J. Pizel and Allen D. Pizel. Wilfred J. Pizel and Allen D. Pizel were nephews of Charles Pizel. It purported to establish a trust—the res being 1,760 acres of real property in Sherman County, Kansas.

Also, on that same day, May 23, 1962, Charles Pizel executed a deed wherein the 1,760 acres of real estate described above were listed, and this deed purported to convey to Charles Pizel, Wilfred J. Pizel, and Allen D. Pizel as trustees of the "Charles Pizel Revocable Trust," as grantees, from Charles Pizel, a single person, as grantor and settlor of the "Charles Pizel Revocable Trust." The said deed and trust agreement remained in the hands of the attorneys representing the said Charles Pizel until the date of his death; neither were filed with the local register of deeds until after Charles Pizel's death.

On May 23, 1962, Charles Pizel also executed his Last Will and Testament. Under Article V of this will, he devised and bequeathed all his personal property and realty not otherwise disposed of in the will to all of his nieces and nephews, except Wilfred J. Pizel and Allen D. Pizel, who had received certain personal property under other articles in the will. Charles Pizel, at the time of making the will and codicil, owned no real estate other than the 1,760 acres described in the trust instrument; the trust is neither mentioned nor referred to in the will.

On June 10, 1975, Charles Pizel signed a document along with Wilfred J. Pizel, Allen D. Pizel and Herbert Pizel entitled "First Amendment to the Charles Pizel Revocable Trust." That document basically provided that Herbert Pizel should be added as a

trustee, along with Allen D. Pizell and Wilfred J. Pizel. In effect, the said Charles Pizel removed himself as a trustee and appointed Herbert Pizel in his stead as trustee by this 1975 amendment. In other words, according to the document, Charles Pizel was to be a beneficiary only and was no longer to be a trustee in any manner. There were no other basic changes from the original trust agreement except those changes necessary to include Herbert, and except that upon the death of Charles Pizel, the amended trust provided for a separation into three separate trusts.

On that same day, Charles Pizel executed a new deed containing the same 1,760 acres described in the trust instrument, which purported to convey the said real estate to "Wilfred J. Pizel, Allen D. Pizel, and Herbert Pizel, Trustees of the 'Charles Pizel Revocable Trust'." This deed was signed by Charles Pizel, individually as grantor, but was not signed by Allen D. Pizel and Wilfred J. Pizel (two of the original trustees). This deed and the "First Amendment to the Charles Pizel Revocable Trust" were likewise placed with the attorneys for Charles Pizel; neither was filed with the register of deeds prior to the death of Charles Pizel.

On January 11, 1979, Charles Pizel executed a "Codicil" to his Last Will and Testament. Slight changes were made by the codicil, as follows:

> (a) Article III referred to a quarter of land which Charles Pizel had originally devised to H. L. Pizel, and acknowledged the fact that he had now deeded it.

> (b) Article IV was amended to include Herbert Pizel, a/k/a H. L. Pizel, as a legatee to receive livestock and farm machinery.

> (c) Article IV was also amended to make provisions about antique machinery owned by the said Charles Pizel.

The decedent, in his codicil, stated: ". . . I do hereby republish, ratify and reaffirm my said Last Will and Testament in all respects as modified by this Codicil . . . ." Therefore, the residuary clause of the will was not altered.

At all times after May 23, 1962, Charles Pizel continued to operate his farming business on the 1,760 acres involved as an individual. He also executed several oil and gas leases relating to the subject property, signing each as an individual. At no time was any business conducted by him or on his behalf as repre-

sentative of a trust. The deposition testimony of each of the three nephews named as trustees indicated that none of them acted in any capacity as a trustee prior to the death of Charles Pizel. Each also expressed his belief that Charles Pizel intended that no trust exist prior to his death.

Soon after the death of Charles Pizel, his attorney filed the original trust instrument and deed, and the amendment to the trust, with the Register of Deeds of Sherman County, Kansas. This was the first official recording of any of these documents.

Thereafter, appellees filed their petition in the District Court of Sherman County, alleging that no trust, in fact, existed at the time of the death of Charles Pizel, and that a subsequent recording of documents by a decedent's attorney would not cause a trust to spring into being. They declared that the subject real estate therefore passed to them as devisees under the will. As such, the recorded documents put a cloud on appellees' title, and they therefore prayed the court to quiet title in them and to order removal of said recordings.

After extensive discovery by way of depositions, each side filed a motion for summary judgment, supported by briefs; both sides at that time indicated that they felt the case was ripe for summary judgment. The district court granted appellees' motion for summary judgment, denied appellants' motion for same, and ordered title quieted in appellees. From this decision, appellants bring this appeal.

The first issue is whether summary judgment was proper in this case. K.S.A. 60-256(c) provides:

"The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

Both parties moved for summary judgment. In their supporting briefs, both parties set forth factual statements which were substantially identical; the depositions of various parties provided corroboration and support for these statements. The appellants, in their brief before the trial court, went so far as to expressly state:

"In comparing the facts as sent [sic] out in Plaintiffs' [appellees] Brief in Support of Summary Judgment and the facts stated above by the defendants [appellants] are in agreement. This is a matter which is ripe for summary judgment. It is a question of law as to whether or not there was a valid trust."

Appellants now claim that certain factual issues did exist, and that summary judgment was therefore not proper.

The mere fact that both parties to a lawsuit move for summary judgment does not, in and of itself, compel the court to grant summary judgment. If material questions of fact actually remain in dispute, summary judgment must not be granted. *Farmers State Bank & Trust Co. of Hays v. City of Yates Center,* 229 Kan. 330, 624 P.2d 971 (1981).

Reviewing the record, we conclude that the parties did agree on the factual background of this case. No material issues of fact are raised when all the pleadings and depositions are viewed together. The case was ripe for summary judgment and the court properly entertained the motions therefor.

The second issue is whether, under the undisputed facts, the appellees were entitled to judgment as a matter of law, or stated another way, whether the trust was valid and in effect at the time of Charles Pizel's death. Because the facts are undisputed and the evidence is documentary in character, the appellate court may determine the legal effect of such facts for itself, much as it would in an original action. *Northern Natural Gas Co. v. Dwyer,* 208 Kan. 337, Syl. ¶ 5, 492 P.2d 147 (1971), *cert. denied* 406 U.S. 967 (1972).

The case of *Shumway v. Shumway,* 141 Kan. 835, 44 P.2d 247 (1935), contains excellent authority regarding the requisites for a valid inter vivos trust, and has been followed consistently by later decisions. In the case of *Jennings v. Jennings,* 211 Kan. 515, 507 P.2d 241 (1973), the court reaffirmed the law of *Shumway:*

"An express trust implies the cooperation of three persons: (1) A settlor, or a person who creates or establishes a trust; (2) a trustee, or person who takes and holds legal title to the trust property for the benefit of another; and (3) a *cestui que trust,* or the person for whose benefit a trust is created." 211 Kan. 515, Syl. ¶ 3.

*Shumway* also enunciated the essential elements of an express trust. This enunciation was reaffirmed in the case of *In re Estate of Ingram,* 212 Kan. 218, 510 P.2d 597 (1973):

"The essential elements of an express trust are (1) an explicit declaration and intention to create a trust, (2) definite property or subject matter of the trust, and (3) the acceptance and handling of the subject matter by the trustee as a trust." 212 Kan. 218, Syl. ¶ 4.

In his memorandum opinion, the trial judge concluded as a

matter of law that the purported trust here failed to meet any of the three aforementioned requirements for validity. Based on these conclusions, the judge determined that this trust was intended by Charles Pizel to take effect only upon his death; this would mean that the statute relating to testamentary dispositions would apply. Because the trust documents were not executed with all the formalities required by that statute, they were not a valid testamentary disposition and were therefore of no effect. The subject property would therefore pass to appellees as takers under the will.

Appellants challenge these conclusions as to all three requirements for a trust. Because these requirements must all be met, the judgment was correct so long as the trial court's conclusion as to any one or more of them is correct. Each requirement will be discussed individually and the judge's conclusions thereon will be addressed in the same manner.

The first requirement is the explicit declaration and intent to create a present trust; a mere declaration of intent to create a trust at some future time is not sufficient. The judge concluded from all the facts and circumstances that Charles Pizel had no intention to create a trust during his lifetime. Appellants argue that the trust instrument itself states an intention to create a present trust, and because the language used is unambiguous, the parol evidence rule excludes extrinsic evidence of intent.

Appellants cite *State Bank of Parsons v. First National Bank in Wichita,* 210 Kan. 647, 504 P.2d 156 (1972); and *In re Estate of Hauck,* 170 Kan. 116, 223 P.2d 707 (1950), where no construction of a trust's provisions was allowed because the intent of the settlor was expressed without ambiguity.

These cases can be distinguished from the case at bar, for in each of them the trust provisions under scrutiny were provisions. relating to the administration of the trust, and the issues raised involved the intention of the settlor regarding the powers and duties of the named trustees, not the settlor's ultimate intention to create a present trust in the first instance. This "trust intent" must exist and "the expression of what purports to be a trust intent will not give rise to a trust unless that intent actually existed." *Shumway,* 141 Kan. at 841 (citing 1 Bogert on Trusts and Trustees, p. 195).

The issue of trust intent cannot be resolved solely from a

self-serving declaration in the trust instrument, but instead must be viewed and decided in light of all the attending facts and circumstances in the case.

In this case, several facts militate against a finding of present trust intent on the part of the grantor. At all times Charles Pizel operated the farming concern on the subject realty in his own name. He retained all income therefrom, and filed tax returns as an individual; no tax return was ever filed in the name of the trust. Also, neither the trust instrument nor the deeds were ever recorded prior to Charles Pizel's death.

Additionally, no business of any kind was ever conducted in the name of the trust by Charles Pizel or anyone else. In fact, Charles Pizel treated this property as his own in all his dealings with or related to it. For example, on October 19, 1976, Charles Pizel executed and delivered several oil and gas leases involving the subject realty. In none of these leases is any mention made of the trust, and Charles Pizel was the sole grantor in said instruments.

The trial court here felt that these surrounding circumstances indicated a lack of trust intent which negated the expressions of present intent in the trust instrument; the court therefore concluded that no present trust intent existed at the time the trust instrument was executed.

We agree with the conclusion of the trial court. The issue of trust intent should be affected by facts and circumstances relating to the other two requirements—the delivery of property into the hands of trustees to hold the property and deal with it as trustees for the benefit of other persons. But there are reasons, other than this, which cause the trial court's judgment to be correct.

The second requirement for a valid trust is that there must be a present transfer to the trustee of the property that is the subject matter of the trust. In this case, Charles Pizel executed the first deed to himself and his two nephews, as trustees. This deed was left with the attorney for Charles Pizel to be filed of record after his death, as was a second deed wherein the grantees were three nephews of Charles Pizel. Charles Pizel retained at all times the right to demand the return of the deeds to himself. This is made clear from the affidavit of Charles Pizel's attorney. From these facts, the trial court concluded that there had not been a "delivery of the deeds purporting to transfer the property to the trustees,"

or, as stated by the court in *Shumway,* 141 Kan. at 837, "an actual conveyance or transfer of lawful, definite property . . . ." (citing from 65 C.J. 231).

Appellants first state that whether there has been a valid delivery is generally a question of the grantor's intent; this rule is particularly applicable where constructive delivery is relied upon, as it is here. To be effective, the grantor must indicate by words or acts his intention to immediately divest himself of title, and to vest it in another. *Agrelius v. Mohesky,* 208 Kan. 790, Syl. ¶¶ 7, 8, 494 P.2d 1095 (1972). Appellants assert that the problem of delivery, being a question of intent, should have been left to the jury, and that the court on motion for summary judgment should not have decided the "delivery" question. They are incorrect in this assertion.

"The question of the delivery of a deed is largely a question of intention, ordinarily to be determined by the jury . . . as a question of fact, but when the facts are not controverted the question should be determined by the court as a question of law . . . ." *Hoard v. Jones,* 119 Kan. 138, Syl. ¶ 9, 237 Pac. 888 (1925).

Appellants also argue that the judge's conclusion of law from the undisputed facts was incorrect. They cite several cases which they say stand for the proposition that delivery of a deed to a third person to hold until the grantor's death, at which time delivery to the grantee is completed, is sufficient delivery, notwithstanding the fact that the grantor remains in possession of and continues to derive income from the subject property until his death. They argue that this rule should prevail in this case.

The cases cited by appellants do indeed state the general rule to be applied. This rule, however, differs from appellants' statement of it. In all the cases cited the court determined that the grantor had relinquished all right to custody or control of the deed; it was this manifest intention to make a present and irrevocable transfer of title which was considered by the court to be the controlling fact which validated the constructive delivery. It was held that in such cases, title passed immediately even though possession and enjoyment were postponed until the grantor's death.

"Where the grantor in a deed deposits it with a third person, to receive and hold the same for delivery to the grantee after the death of the grantor, with a declared or manifest intention to place it beyond the custody and control of grantor and thereby to give it effect as a present conveyance, it is a sufficient delivery, and in such a case title is deemed to vest at once in the grantee with only the enjoyment of

the property being postponed (following *In re Estate of Hulteen,* 170 Kan. 515, 227 P.2d 112)." *Yaple v. Morris,* 194 Kan. 149, Syl. ¶ 1, 398 P.2d 320 (1965).

See also *In re Estate of Loper,* 189 Kan. 205, Syl. ¶ 1, 368 P.2d 39 (1962); and *Hicklin v. DeVore,* 179 Kan. 345, Syl., 295 P.2d 668 (1956).

In the case at bar it was admitted by appellants that the deed was placed with Charles Pizel's attorney for the sole reason that Charles Pizel might later wish to revoke the transfer and reclaim the deed. Such an admission is not reconcilable with an assertion that Charles Pizel had relinquished all right to control and custody of the deed by delivering it to his attorney. Furthermore, Charles Pizel in fact demanded and accepted a return of the original deed from his attorney, substituting a different deed in its place. For these reasons, we also agree with the conclusions of the trial court regarding the insufficiency of delivery in this case.

The final requirement for a valid inter vivos trust is that the named trustee must accept the trust property and deal with it as a trustee, for the benefit of others. The trial judge concluded from the facts that this requirement had never been fulfilled. Appellants challenge that conclusion.

The record contains undisputed evidence that at no time after execution of the trust instrument did any of the named trustees, other than the settlor himself, Charles Pizel, deal with the realty in any capacity. Prior to his death, Charles Pizel continued to occupy and operate the subject realty as an individual, for his own benefit; he never conducted any business in the name of the trust nor as trustee thereof. Even after the amendment to the trust, which removed Charles as a named trustee and placed his nephew Herbert Pizel in his stead, Charles still managed the property personally and in his own name. The testimony of the nephew-trustees clearly indicates that none of them ever did any act as trustee under this trust. Additionally, their testimony relates the fact that Charles Pizel had told them that it was his intention that their duties as trustees would not arise until after his death. While this last testimony applies to the issue of present trust intent as discussed earlier, it also clearly shows that no named trustee ever dealt with this property as a trust.

Appellants argue that because Charles Pizel was himself a trustee, at least for a time, the fact that the other named trustees were not active in managing the trust is not important. They cite

*Rathbun v. Hill,* 187 Kan. 130, 354 P.2d 338 (1960), wherein a trust with two named trustees was upheld even though only one of these trustees ever actually performed trust duties. They assert that the case at bar and *Rathbun* are similar.

On the contrary, the instant case can be distinguished from *Rathbun* on two grounds. First, in *Rathbun,* the two trustees were sons of the settlor; the settlor himself was not a trustee. Second, the one son-trustee in *Rathbun* did perform acts which amounted to acceptance of the position of trustee, and he acted in the name of the trust, not as an individual. In the case at bar, no person has ever dealt with the property in the name of the trust and the only person to deal with the property at all, Charles Pizel, continued to deal with it as an individual even after he had removed himself as a trustee. The case cited by appellants does not support their argument. The conclusion of the trial court on this issue was also correct.

The judgment of the trial court was correct in all respects.

Affirmed.