No. 72,929

BETTY TALIAFERRO, *Appellee,* v. ADORIA M. TALIAFERRO, *et al.,*
*Appellants.*
(921 P.2d 803)

Opinion filed July 26, 1996.

*Michael Scott Taliaferro*, of Lakeway, Texas, argued the cause and was on the briefs for appellants.

*Benjamin F. Farney*, of Law Offices of Benjamin F. Farney, of Olathe, argued the cause, and *Bradley L. Farney*, of the same firm, was with him on the brief for appellee.

The opinion of the court was delivered by

LARSON, J.: In this declaratory judgment action, proponents of the Will C. Taliaferro Trust appeal from a trial court decision that the trust was invalid because the settlor had not transferred title to property he owned to himself as trustee. We reverse and hold that where the settlor of a trust executes a declaration of trust, no transfer of legal title to the trust property is required to fund the trust.

On March 29, 1990, while in the hospital, Will C. Taliaferro executed two revocable trust indentures, a will, and various other documents. The trust documents had been prepared by his nephew, an attorney, who had little estate planning experience. The first trust was called the Taliaferro & Browne Trust. It covered the ownership of Will C. Taliaferro's business venture, the Taliaferro & Browne, Inc., engineering firm, and the proceeds of a life insurance policy on his life. This Taliaferro & Browne Trust was the subject of our decision in *Taliaferro v. Taliaferro*, 252 Kan. 192, 843 P.2d 240 (1992).

The second trust was a personal revocable inter vivos trust, the Will C. Taliaferro Trust, and is the subject of this action. Section One of the Will C. Taliaferro Trust provides in part:

"I, Will Cedric Taliaferro,. as Grantor, hereby declare the establishment of the Will C. Taliaferro Trust (hereinafter sometimes referred to as 'the trust'). I hereby declare that I have appointed myself as Trustee of the Trust (hereinafter sometimes referred to as 'The Trustee') and declare, further, that as the Trustee, I accept and hold in trust all of the property described in Schedule A, which is attached hereto and incorporated herein by reference. Such property, together with any other property that may later become subject to this trust, shall constitute the trust estate, and shall be held, administered and distributed by the Trustee as herein provided."

The trust property was described in Schedule A to the trust indenture:

"The following described property of Will. C. Taliaferro is held in trust and made subject to the terms and provisions of the foregoing Declaration of Trust for the Will C. Taliaferro Trust:
"1. All Douglass Bank stock that is solely or separately owned by Grantor.

"2. Grantor's entire interest in Equitable Insurance Company Policy number 34-590-634 MSC/KSM, a policy of insurance on the life of Carl Buckner.

"3. All of Grantor's household goods, the contents of Grantor's safe deposit box, and all other tangible personal property owned by Grantor at the time of execution of this agreement, subject to disposition at the Trustee's discretion from this date forward, and all such property hereinafter acquired by Grantor and delivered to Trustee as of the date of death of Grantor."

Will C. Taliaferro was the income beneficiary of this trust during his life. After his death, the successor trustee was to distribute the accrued income and corpus among a number of named beneficiaries, with the remainder to go to Betty Taliaferro, who was Will C. Taliaferro's wife, his sole heir, the executor named in his will, the designated successor trustee of the Will C. Taliaferro Trust, and the opponent of the trust herein.

Will C. Taliaferro died September 1, 1990. The present case is a declaratory judgment action brought by Betty Taliaferro to determine the validity of the Will C. Taliaferro Trust. In her petition, Betty Taliaferro contended that Will C. Taliaferro never transferred any of the property allegedly subject to the trust into the trust because none of the property in Schedule A had been assigned to the trust or to Will C. Taliaferro as trustee. She further alleged that Will C. Taliaferro did not treat the property as trust property during his lifetime but rather as if he owned it individually. Mrs. Taliaferro purported to bring the action to establish the ramifications if she were required to elect against her husband's estate plan.

After hearing cross-motions for summary judgment, the trial court determined that a material question of fact existed as to whether Will C. Taliaferro had the requisite intent to create a valid trust and ordered an evidentiary hearing. The court reasoned: "The intent of Mr. Taliaferro (as expressed in the trust document) to create a pour-over trust is clear enough, but the fact that he did no overt acts transferring property to the trust leaves his intent in question."

After the evidentiary hearing, the trial court found the Will C. Taliaferro trust to be invalid. It held the evidence did not show that Will C. Taliaferro had intended to transfer property to the

corpus of the trust. The trial court held that *Pizel v. Pizel*, 7 Kan. App. 2d 388, Syl. ¶ 3, 643 P.2d 1094, *rev. denied* 231 Kan. 801 (1982) laid down three requirements the trust had to meet to be a valid inter vivos trust: "(1) an explicit declaration and intention to create a trust; (2) definite property or subject matter of the trust; and (3) the acceptance and handling of the subject matter by the trustee as a trust."

The trial court found there was a sufficient declaration of trust and intent to create a trust to meet the first *Pizel* requirement— an explicit declaration and intention to create a trust—and that the second requirement—that there be definite property or subject matter of the trust—was satisfied by the Douglass Bancorp stock owned by Will C. Taliaferro, the life insurance policy on Carl Buckner, and Will C. Taliaferro's personal jewelry and clothing.

However, the trial court found that the evidence failed to establish the third requirement of a valid trust it attributed to *Pizel*. The court found the evidence did not establish that the trustee, Will C. Taliaferro, had accepted and handled the subject matter of the trust as trust property, nor had Will C. Taliaferro, as settlor, effected the transfer of the property to the trust. The trial court reasoned at length, but concluded in relevant part: "Under *Pizel* he was required by words or acts to immediately divest himself of title, and to vest title in himself as trustee. Nothing in Mr. Taliaferro's words or actions indicates that he did in fact intend to divest himself of title to his property."

The court also based its decision on its conclusion that whatever Will C. Taliaferro's original intentions were when executing the trust document, he changed his mind about creating a trust in the months following. This holding was drawn primarily from the fact that Will C. Taliaferro had transferred the stock subject to the Taliaferro & Browne Trust to himself as trustee but took no similar action with respect to property subject to the Will C. Taliaferro Trust.

On appeal, the appellant proponents of the trust argue the trial court erred in finding the trust to be invalid. They argue that regardless of whether the Douglass Bancorp stock and life insurance proceeds were transferred into the trust, Will C. Taliaferro's per-

sonal property was; that the trust instrument itself reflects an intent to transfer title to the trust property from Will C. Taliaferro as settlor to Will C. Taliaferro as trustee; that, properly viewed, the evidence does not show that the settlor changed his mind about funding the trust; that any change of mind after the declaration of trust would be immaterial because the trust was created at the execution of the declaration; that Will C. Taliaferro's intent to create a trust was undisputed; that Will C. Taliaferro did not revoke the trust in accordance with the provisions of the declaration; and that the trial court failed to consider whether the Will C. Taliaferro Trust was brought into being by incorporation by reference in the Taliaferro & Browne Trust, which directed at least $327,000 into the Will C. Taliaferro Trust. Hence, appellants attack the trial court's factual findings, its legal conclusions, and its failure to make factual findings or legal conclusions.

Appellee argues the trial court correctly determined the Will C. Taliaferro Trust was invalid. Although she has not cross-appealed, she argues that none of the requirements for establishing a valid trust were satisfied and that the issue of whether the trust was created by incorporation was not presented to the trial court and would be ineffective in any case.

*Did Will C. Taliaferro transfer definite property sufficient to create a trust?*

As a preliminary matter, it is important to note that the Will C. Taliaferro Trust is purported to be created by a declaration of trust, rather than by the transfer of the trust property to a separate trustee. Restatement (Second) of Trusts § 17 (1957) teaches us that "[a] trust may be created by (a) a declaration by the owner of property that he holds it as trustee for another person; or (b) a transfer inter vivos by the owner of property to another person as trustee for the transferor or for a third person."

Further, we have held:

"An express trust has three requisite features; namely: (1) An explicit declaration and intention to create a trust; (2) the transfer of lawful and definite property made by a person capable of making transfer thereof; and (3) a requirement to hold [the property] as trustee for the benefit of a *cestui que trust* with directions

as to the manner in which the trust funds are to be applied." *Jennings v. Jennings,* 211 Kan. 515, Syl. ¶ 4, 507 P.2d 241 (1973).

The trial court explicitly based its final judgment that the Will C. Taliaferro Trust was invalid on its finding that Will C. Taliaferro made "no present and irrevocable transfer of title of any of the property mentioned in Schedule A of the Trust Declaration." Appellants attack both the factual basis for the trial court's conclusion and argue the court made erroneous conclusions of law.

"Where the trial court has made findings of fact and conclusions of law, the function of an appellate court is to determine whether the findings are supported by substantial competent evidence and whether the findings are sufficient to support the trial court's conclusions of law." *Tucker v. Hugoton Energy Corp.*, 253 Kan. 373, Syl. ¶ 1, 855 P.2d 929 (1993). In reviewing the trial court's factual findings, we may not reweigh the testimony or pass on the credibility of witnesses. *McKissick v. Frye*, 255 Kan. 566, Syl. ¶ 8, 876 P.2d 1371 (1994). "[T]his court must accept as true the evidence and all inferences to be drawn therefrom to support the findings of the trial court, and must disregard any conflicting evidence or other inferences that might be drawn therefrom." *Tucker v. Hugoton Energy Corp.*, 253 Kan. at 377.

However, our review of conclusions of law is unlimited. *Gillespie v. Seymour*, 250 Kan. 123, 129, 823 P.2d 782 (1991). If the trial court has relied on an incorrect legal standard, such that the disputed findings of fact are immaterial to the proper resolution of the case, there is no reason for the appellate court to consider the sufficiency of the evidence to establish those facts, as that issue is rendered moot.

The trial court's legal conclusion is erroneous because there is no requirement that a settlor who also serves as trustee of a trust established by declaration must transfer legal title to the trust property.

Although the present transfer of property to the trustee is crucial when the settlor is not also the trustee, or when the settlor attempts to establish the trust solely by transfer, this requirement has not been included in the requirement for establishment of a trust because it is not necessary in every trust.

"A trust is a fiduciary relationship with respect to property subjecting the person by whom the property is held to equitable duties to deal with property for the benefit of another person, and arising as a result of an intention to create the relationship." *In re Estate of Sheets*, 175 Kan. 741, Syl. ¶ 3, 267 P.2d 962 (1954). See Restatement (Second) of Trusts § 2 (1957).

Where the present transfer of legal title to property is required, it is because common sense and logic dictate that the requirements of a valid trust cannot be fulfilled without it. Before property can be said to be held in trust by a trustee, the trustee must have legal title. Without legal title the trustee holds nothing in trust. Furthermore, the backbone of trust law is the concept of separate ownership of equitable and legal interests. See I Scott on Trusts § 1, p. 4 (4th ed. 1987); see also *Mathews, Administrator v. Savage*, 195 Kan. 501, Syl. ¶ 1, 407 P.2d 559 (1965) (fundamental essential of any trust is separation of legal and equitable estate); *Fry v. McCormick*, 170 Kan. 741, 743, 228 P.2d 727 (1951) (separation of legal and equitable estate is fundamental to the existence of any trust); Restatement (Second) of Trusts § 2, Comment f (in trusts there is a separation of legal and equitable interests in the subject matter). Ordinarily, transfer of legal title to the trust property to a trustee accomplishes the separation of legal and equitable interests.

However, a trust can exist where the settlor is both trustee and life beneficiary. See *In re Estate of Ingram*, 212 Kan. 218, 510 P.2d 597 (1973). Where, as here, the settlor and the trustee are the same person, no transfer of legal title is required, since the trustee already holds legal title. The important question in such cases is whether an equitable interest has been divested to a cestui que trust by the settlor. If such a transfer of an equitable interest is made, the separation of equitable and legal interests required to support a trust is present, and the settlor-trustee holds legal title to the trust property subject to the trust.

In the present case, the settlor declared the property to be held in trust. "The declaration is a conveyance of an equitable interest." Bogert, Trusts & Trustees § 147, p. 62 (2d ed. rev. 1979). A declaration of trust is considered in a court of equity as equivalent to an actual transfer of legal interest in a court of law. *Milholland v. Whalen*, 89 Md. 212, 214, 43 A. 43 (1899).

Bogert, Trusts & Trustees § 141 (2d ed. rev. 1979) states:

"It is sometimes stated that the transfer by the settlor of legal title to the trustee is essential to the creation of an express trust. This statement is inaccurate in one respect. Obviously, if the trust is to be created by declaration there is no real transfer of any property interest to a trustee. The settlor holds a property interest before the trust declaration, and after the declaration he holds bare legal interest in the same property with the equitable or beneficial interest in the beneficiary. No new property interest has passed to the trustee. The settlor has merely remained owner of part of what he formerly owned."

The Comment on Clause (a) of Restatement (Second) of Trusts § 17 states directly: "If the owner of property declares himself trustee of the property, a trust may be created without a transfer of title to the property." If the settlor chooses to execute a conveyance of the property to himself or herself as trustee, it has no additional legal effect beyond the declaration.

"So also, the owner of property can create a trust by executing an instrument conveying the property to himself as trustee. In such a case there is not in fact a transfer of legal title to the property, since he already has legal title to it, but the instrument is as effective as if he had declared himself trustee." Restatement (Second) of Trusts § 17, Comment on Clause (a).

I Scott on Trusts § 17.1 (4th ed. 1987) expresses the same idea:

"A trust can be created without a transfer of the property. The owner of property can, by a declaration of trust, make himself trustee of property for others. . . . No transfer of the property is necessary for the creation of such a trust, since the purpose is that the settlor himself shall continue to hold the property, no longer, it is true, for his own benefit, but for the benefit of others. . . .

"Where the owner of property wishes to make himself trustee of the property for another, the simplest method of accomplishing his purpose is to execute an instrument declaring that he holds the property in trust. He can, however, accomplish the same purpose by executing an instrument conveying the property to himself as trustee. This is perhaps not so artistic a method of creating the trust, since in fact the legal title is in him both before and after the conveyance. In substance he is simply declaring himself trustee of the property."

Thus, the mere declaration that real estate is held in trust, without the transfer of a deed, is sufficient. *Estate of Heggstad*, 16 Cal. App. 4th 943, 950, 20 Cal. Rptr. 2d 433 (1993). The same is true as to a policy of life insurance, without reference to whether the named beneficiary of the policy itself is changed: "Where a policy

of life insurance is payable to the insured or his estate, he can effectively declare himself trustee of his rights under the policy." IA Scott on Trusts § 82.1, p. 461 (4th ed. 1987).

*Pizel v. Pizel*, 7 Kan. App. 2d 388, on which the trial court relied, is distinguishable, as it involved a trust the settlor attempted to create by a failed deed rather than by declaration. In *Pizel*, the purported settlor executed a document entitled "Charles Pizel Revocable Trust." Although the settlor was named as one of several trustees, the document was not a declaration of trust but was accompanied by a separate deed purporting to convey the subject matter of the trust, 1,760 acres of land, from Charles Pizel, settlor, to the trustees of the Charles Pizel Revocable Trust. Both the deed and the trust were held by Pizel's attorneys until his death. Several years after executing the original trust document, Pizel, by amendment of the trust document, replaced himself as trustee with Herbert Pizel and executed a second deed purporting to convey the same 1,760 acres of land from himself as settlor to the reconstituted group of trustees. Again, these documents remained with Pizel's attorneys. The trial court and the Court of Appeals found that Pizel never had the requisite intent to establish a trust, he never transferred the trust property to the trustees, and no named trustee had accepted the property as trustee. Those facts are materially different from those we face herein.

*Pizel* illustrates the rule set forth by Bogert, Trusts & Trustees § 202, p. 12 (2d ed. rev. 1992):

"If a voluntary settlor intends to create a trust by way of transfer to a trustee but his conduct in order to accomplish his purpose is wholly ineffective to transfer any legal interest to the trustee or any equitable interest to the beneficiary, equity will not treat such conduct as amounting to a declaration of trust with the settlor as trustee, even though such a declaration could have been accomplished without formality. Thus if settlor never delivers the deed of transfer, and so it is a nullity as an instrument of transfer, equity will not treat the undelivered instrument as a declaration of trust by the settlor."

Thus, *Pizel* is consistent with *Johnson v. Capitol Federal Savings & Loan Assoc.*, 215 Kan. 286, 524 P.2d 1127 (1974), in which we found an express trust was created by declaration even though

there was no record of any transfer of legal title to trust property from the settlor as full owner to the settlor as trustee.

We hold that Will C. Taliaferro clearly declared himself as trustee of the property described in schedule A, which was attached to and made a part of the trust document. No further document transferring title to the property was required.

*Did Will C. Taliaferro manifest a present intent to transfer an equitable interest in his property and thereby create a trust through his declaration of trust?*

In a case where a trust is purported to have been created by declaration, to determine whether the trust is valid the factfinder must ascertain whether, at the time the declaration was executed, there was a present intent to transfer an equitable interest to the cestui que trust and thereby create a trust. See *Bank v. McKenna*, 168 Mo. App. 254, 153 S.W. 521 (1913) (issue in a declaration case is whether declaration shows unequivocal intent to pass an equitable interest presently).

The trial court put great weight on Will C. Taliaferro's conduct after executing the declaration of trust in determining no trust had been created. However, subsequent behavior inconsistent with the creation of a trust is of no importance to the question of whether a trust came into being if there was a present intent to create a trust and transfer an equitable interest contemporaneous with the declaration.

"The declaration of trust immediately creates an equitable interest in the beneficiaries, although the enjoyment of the interest is postponed until the death of the settlor, and although the interest may be divested by the exercise of the power of revocation." IA Scott on Trusts § 57.6, pp. 189-90 (4th ed. 1987). Once the trust is established, the settlor's declarations thereafter in derogation are immaterial unless they rise to the level of a revocation. See *Elliott v. Gordon*, 70 F.2d 9, 13 (10th Cir. 1934).

The fact that a trustee exceeded his or her power and violated his or her trust would not terminate the trust, but merely would "provide justification for the removal of the trustee and appointment of a successor." *In re Estate of Yetter*, 183 Kan. 340, 349,

328 P.2d 738 (1958). Therefore, the subsequent mindset of the settlor-trustee, unless it is accompanied by a revocation of the trust, is immaterial where the conveyance and establishment of an equitable interest were made in the first instance.

Although the settlor-trustee's subsequent treatment of trust property without regard to the duties imposed by the trust might be consistent with the absence of an intent to create a trust *ab initio*, it is equally consistent with the conclusion that a trust which was created was subsequently breached. Thus, it is the commended practice to execute documents of transfer. Such documents may help prove the settlor intended a declaration to be operative to create a trust, help prevent a challenge to the trust as a testamentary disposition, and avoid the necessity of probating the property, but they are not required by the law of trusts. See IIA Scott on Trusts § 179.3, p. 509 (4th ed. 1987) (failure to register stocks "as trustee" rather than individually does not invalidate trust but may subject trustee personally to liability for losses sustained thereby).

The intent to create a trust can be manifested through a plain affirmative declaration by a person that he or she holds property for the benefit or use of another person. *Johnson v. Capitol Federal Savings & Loan Assoc.*, 215 Kan. 286, Syl. ¶ 6. Contrary to the appellee's argument, where the trust is purportedly created by declaration, a settlor's intent may be established from the face of the instrument. *In re Estate of Morton*, 241 Kan. 698, 703, 769 P.2d 616 (1987). The statement in *Pizel* to the contrary applies only where the trust instrument contemplates a separate transfer of property to the trustee which is never made.

A determination of whether the trust instrument before us is sufficiently plain and unambiguous to establish the requisite intent requires the construction of a written instrument—a process over which our review is unlimited. See *Galindo v. City of Coffeyville*, 256 Kan. 455, Syl. ¶ 2, 885 P.2d 1246 (1994). Whether a written instrument is ambiguous is a question of law. *Kennedy & Mitchell, Inc. v. Anadarko Prod. Co.*, 243 Kan. 130, 133, 754 P.2d 803 (1988). Ambiguity in a written instrument does not appear until the application of pertinent rules of interpretation to the face of the instrument leaves it genuinely uncertain which of two or more

meanings is the proper meaning. *Patrons Mut. Ins. Ass'n v. Harmon*, 240 Kan. 707, 713, 732 P.2d 741 (1987). The subsequent actions of the parties to a written instrument can be considered only to resolve ambiguity that appears on the instrument's face. See *Heyen v. Hartnett*, 235 Kan. 117, 122-23, 679 P.2d 1152 (1984); *Brown v. Lang*, 234 Kan. 610, Syl. ¶¶ 1, 2, 675 P.2d 842 (1984).

The trust instrument purporting to create the Will C. Taliaferro Trust on its face unequivocally and unambiguously evidences Will C. Taliaferro's intent to create a present trust at the time it was executed and to assume the duties of a trustee. Under the parol evidence rule, the trial court erred in considering extrinsic evidence to rebut the clear language of the trust declaration:

"If the owner of property by a written instrument declares that he holds the property upon a particular trust, extrinsic evidence, in the absence of fraud, duress, mistake or other ground for reformation or rescission, is not admissible to show that he intended to hold the property upon a different trust or to hold it free of trust." Restatement (Second) of Trusts § 38(4) (1957).

Even if the instrument had not clearly established trust intent and was sufficiently ambiguous to permit the court to look to the settlor's subsequent conduct, the factors relied on by the trial court in this case were erroneous as a matter of law.

The trial court noted that Will C. Taliaferro

"did not change the name of the owner of the Equitable Insurance Company life insurance policy to himself as trustee. He did not obtain a tax ID number for the trust. He did not vote the stock he owned as trustee. He opened no bank accounts in the name of the trust. Premiums on the life insurance policy were paid from his personal account. Most importantly, he did not change his stock certificates from his name to himself as trustee."

Will C. Taliaferro never acquired a tax identification number for the trust; however, since 1981, tax identification numbers have not been available for self-declared trusts. See Treas. Reg. § 1.671-4(b) (as amended in 1995); Treas. Reg. § 301.6109-1(a)(2) (as amended in 1995); Bogert, Trusts & Trustees § 233, p. 20 n.15 (2d ed. rev. 1992).

The fact that Will C. Taliaferro on one occasion voted the Douglass Bancorp shares held in trust individually without specifying he

was acting as trustee is not inconsistent with his role as trustee. The law of trusts does not require that securities be transferred to the settlor "as trustee." See Bogert, Trusts & Trustees § 142(b) (2d ed. rev. 1979) ("The owner of shares of stock in a corporation may make himself trustee of the shares for another by oral or written declaration of the trust, without delivery of any document to the beneficiary or change on the corporation stock records."). Moreover, the trust declaration itself grants the trustee the power "[t]o cause to be registered in its name, individually *or* as Trustee . . . any securities . . . from time to time held by it."

In addition, the fact that the proceeds of a life insurance policy are declared to be equitably conveyed is independent of who pays the premiums and it is immaterial that the insured, or in this case the settlor individually, continued to pay the premiums. See IA Scott on Trusts § 57.3, pp. 152-54 (4th ed. 1987). The trial court's conclusion to the contrary is erroneous.

Finally, although no bank account was opened in the trust's name, the record reveals no exigency for the creation of one.

In finding the trust invalid, the trial court also relied on its conclusion that after conferring with a second attorney, Will C. Taliaferro reissued the stock in Taliaferro & Browne, Inc., but failed to do so as to the Douglass Bancorp stock described in Schedule A of the Will C. Taliaferro Trust. The only direct evidence on this issue is the specific wording of the trust declaration. Evidence of inconsistent actions or a different action in dealing with one trust than another does nothing to invalidate a transfer which was completed upon execution of the trust instrument. Under the provisions of the trust document, revocation of the trust could be accomplished only by a "duly executed instrument." There is no evidence Will C. Taliaferro ever executed any instrument revoking the trust. In addition, the trial court's conclusion that Will C. Taliaferro changed his mind is not supported by any substantial competent evidence.

*Did Will C. Taliaferro agree to act as trustee?*

Did Will C. Taliaferro do what is required to meet the third element of a trust and accept, as trustee, the subject matter as trust

property? We find that the undisputed facts in the record establish as a matter of law that he did. The focus of this element is on the *acceptance* by the trustee of the property as trust property, not the subsequent treatment of the property. In this case, Will C. Taliaferro clearly accepted the trust property and agreed to act as trustee of the trust he created.

Where the trustee and life beneficiary are separate, the determination of whether the putative trustee agreed to accept the property as trust property is relatively easy. If the trustee fails to assume any relationship with the subject matter of the trust, there is no *acceptance*; if the trustee treats trust property as his or her own inconsistent with the duties imposed by the trust instrument, the property, although accepted, is not accepted as *trust* property.

However, where, as here, the trustee is also the life beneficiary, it may often be difficult to establish acceptance of the property as trust property because the actions of a trustee/life beneficiary may be indistinguishable from the actions of an owner of all interests in the property. Nevertheless, the proponent of the trust must prove this element.

In this case, Will C. Taliaferro's acceptance of the property as trust property and his willingness to act as trustee is proved by the unambiguous signed trust instrument in which he swore he was holding the property *as trustee of trust property*: "I hereby declare that I have appointed myself as Trustee of the Trust (hereinafter sometimes referred to as 'The Trustee') and declare, further, that as the Trustee, I accept and hold in trust all of the property described in Schedule A." Again, not only does the parol evidence rule restrict the extrinsic evidence that may impeach this sworn declaration, but also, even if Will C. Taliaferro's subsequent actions were considered, they were not inconsistent with having conveyed a present revocable equitable interest, the enjoyment of which was delayed, and accepting the responsibilities of trustee of that property at that time.

Because we have concluded, as a matter of law, that Will C. Taliaferro succeeded in creating an inter vivos revocable trust which he never revoked, we need not reach the issues of whether the trial court erred in failing to consider whether the Will C.

Taliaferro Trust came into being because it was incorporated by reference into the Taliaferro & Browne Trust, which placed money into it.

The decision of the trial court is reversed.