No. 83,192

BETTY TALIAFERRO, *Appellant,* v. ADORIA M. TALIAFERRO, *et al.,* *Appellees.*

(7 P.3d 1241)

Opinion filed July 14, 2000.

*Robert R. McQuain,* of McQuain, Block, DeHardt & Rosenbloom, P.C., of Kansas City, Missouri, argued the cause, and *Rebecca D. Martin,* of the same firm, was on the briefs for appellant.

*Curtis L. Tideman,* of Lathrop & Gage, L.C., of Overland Park, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

LARSON, J.: This is the third appeal in the continuing saga of the trusts created by Will C. Taliaferro, who died testate on September 1, 1990. The previous appeals before our court were *Taliaferro v. Taliaferro,* 252 Kan. 192, 843 P.2d 240 (1992), (*Taliaferro I*) and *Taliaferro v. Taliaferro,* 260 Kan. 573, 921 P.2d 803 (1996) (*Taliaferro II*).

In March 1990, Will C. Taliaferro executed a will and two revocable trusts, the Taliaferro & Browne Trust (the T & B Trust) and the Will C. Taliaferro Trust (the Will C. Trust). Will was survived by his wife Betty, who is his sole heir at law and the executrix of his will and estate.

In this appeal, Betty asserts she is entitled to be reimbursed by the T & B Trust and/or the Will C. Trust for debts and expenses allegedly attributable to her late husband and his estate which she personally paid. Betty filed two motions in the trial court seeking reimbursement from the T & B Trust. Her motions were denied. Betty appeals.

In order to better understand the issues raised by this appeal we first provide a brief summary of the entities involved, the issues and results of previous litigation, and the arguments and ruling that led to the present appeal.

The T & B Trust assets consist of 100% of the stock of Taliaferro and Browne, Inc., an engineering firm, and the proceeds from a life insurance policy on Will's life. The policy was owned by Taliaferro and Browne, Inc., and the T & B Trust was the named beneficiary. *Taliaferro II*, 260 Kan. at 575; *Taliaferro I*, 252 Kan. at 193. Will named himself trustee during his life and reserved to himself during his life all net income from the trust. Upon his death, the net income from the trust was to be paid to Betty Taliaferro during her life. Nearly $600,000 in life insurance proceeds were paid to the trust upon Will's death. A key clause of the trust provides that $327,000 is to be poured over into the second trust— the Will C. Trust. His successor trustee, Adoria Taliaferro, was trustee of the T & B Trust at all times relevant to the proceedings herein and is the only appellee in this appeal.

The Will C. Trust is a personal revocable inter vivos trust that began with Will as the trustee and income beneficiary during his lifetime. The successor trustee is to distribute the accrued income and corpus among a number of named beneficiaries, and the remainder goes to Betty. Scott Taliaferro is the acting successor trustee of the Will C. Trust in the proceedings relevant to this appeal.

Betty brought a declaratory judgment action in 1991 to invalidate the T & B Trust. That action led to *Taliaferro I*, in which we held the T & B Trust was valid, but we agreed that, as a surviving spouse who did not consent to the revocable T & B Trust, Betty could reach the assets in that trust to the extent necessary to obtain her lawful distributive share of her husband's estate. 252 Kan. at 194, 200, 203. We ordered Betty to file a spousal election and held

that if she elected to take against the will, she would be entitled to have so much of the corporate stock transferred to the estate as would afford her the one-half distributive share of her husband's assets to which she was entitled. 252 Kan. at 203. Betty later filed an election to take against the will, so that in addition to the roughly $257,000 in net income she received from the T & B Trust during its life, she also eventually received $162,500 from the T & B Trust as her spousal share pursuant to her election.

In August 1994, Betty filed a declaratory judgment action to invalidate the Will C. Trust on the grounds that Will had not transferred title to the property he owned to himself as trustee. An appeal in that action led to *Taliaferro II*, where we held the Will C. Trust was valid. 260 Kan. at 586-87.

Beginning in 1994, Betty, as executrix of Will's estate, disputed in United States Tax Court a proposed estate tax deficiency claimed by the Internal Revenue Service (IRS). In February 1998, the estate entered into a stipulation of settled issues with the IRS in Tax Court, and the net federal estate tax due and owing was determined to be $191,068 plus interest after payment of Kansas inheritance taxes of $45,434.

Later in 1998, Betty filed a motion for payment of federal estate taxes, Kansas inheritance taxes, and attorney fees in which she asked that the federal estate taxes and Kansas inheritance taxes and interest thereon be paid out of the T & B Trust on the grounds that her share of the estate was not taxable and the only remaining assets of Will's that could be used to pay the taxes were in the T & B Trust. The trial court granted the motion, relying in part on *Jackson v. Jackson*, 217 Kan. 448, Syl. ¶ 2, 536 P.2d 1400 (1975), where we held that, in the absence of instructions of the testator, a surviving spouse's share of the estate, to the extent it qualifies for the marital deduction under federal estate tax law, is not to be charged with or reduced by any part of the federal estate tax imposed on the testator's estate.

Betty's next actions led to the current appeal. Betty filed a motion for reimbursement of expenses in November 1998, and an amended motion for reimbursement of expenses in December 1998. In these motions, Betty asserted she had personally paid

many of the decedent's debts and expenses (*e.g.*, various debts incurred during the decedent's lifetime, taxes, accounting fees, debts of last illness, and funeral expenses), and she asked in the amended motion that the T & B Trust be required to reimburse her in the sum of $232,350.49. In support of her motions she stated that because Will's probate estate was insolvent it could not pay all his creditor's claims, argued that a grantor who transfers assets into a trust cannot create a spendthrift trust as to his or her own creditors, and contended that because these expenses were allowed as deductions on the estate tax return she had benefitted the T & B Trust. She cited Section Ten (R) and Section Nine of the T & B Trust as authority for her right to be reimbursed.

At the hearing on the motions for reimbursement, Betty asserted that Section Ten (R) of the T & B Trust permitted the Trustee to pay costs and expenses of the Trust and argued the Will C. Trust had a provision permitting the trustee to pay for the grantor's last illness and funeral expenses. She stated she could have refused to have paid the expenses and could have disclosed to the creditors the existence of the trusts and contended that, had she done so, many if not all of the creditors would probably have pursued the assets in the trust by filing a petition for disclosure. (See K.S.A. 59-2216, regarding petitions for disclosure.) Betty's arguments were summed up as "primarily" being that "both trusts allow for the payment of expenses."

When asked at the hearing why Betty had taken it upon herself to pay the debts personally, her counsel explained that Betty said she paid the debts out of a sense of moral obligation. Her attorney asserted, however, that the payments benefitted the T & B Trust because many of the expenses were deducted on the federal estate tax return, thereby decreasing the estate's federal estate tax liability, which the T & B Trust eventually paid.

The representatives of the several opposing parties argued that the trust language referred to expenses associated with administration of the trust and that the expenses paid by Betty did not qualify; noted that the trust language on which Betty relied was discretionary; said her spendthrift trust argument was irrelevant because Betty was not a creditor of Will, his estate, or the trust and had

not claimed to have acquired the rights of the creditors; questioned whether the debts Betty paid had been preceded by timely claims against the estate; and disputed Betty's claim that the debts and expenses were solely attributable to Will or his estate.

The trial court noted that the only motion pending before the court at that time was for reimbursement against the T & B Trust and no proper claim had been made against the Will C. Trust. The court then denied Betty's motion, stating:

> "I cannot find any language in the Taliaferro and Brown[e] Trust that would allow me to order those expenses reimbursed to Betty Taliaferro. It appears to me that the Taliaferro and Brown[e] Trust permits the Trustee to pay expenses for the benefit of the Trust, but I don't see anything in the language that appears under Section Nine, Section Nine or Section Ten, that allows payment of his last illness and funeral or personal debts that he had incurred during his lifetime."

The court scheduled a final accounting for the T & B Trust and said that, upon the funding of the Will C. Trust, the court could consider whether it could compel the trustee of the Will C. Trust to pay any of the claimed expenses.

At the March 1999 hearing, the court approved the final accounting of the T & B Trust and ordered the remaining funds of that trust to be poured over into the Will C. Trust pursuant to the trust terms. At that hearing, the trial court again told Betty she could file a motion for reimbursement against the Will C. Trust if she so desired. Betty never filed such a motion in this action, and she states on appeal that she, instead, filed a separate action on April 19, 1999, in Johnson County District Court against the Will C. Trust.

Betty appealed the final order of the March 1999 hearing as well as the earlier denial of her motions for reimbursement. Our jurisdiction is pursuant to K.S.A. 20-3018(c).

*Standards of Review*

To the extent Betty's issues require interpretation of the trust documents, construing a written instrument is a question of law subject to unlimited review. See *In re Estate of Sanders*, 261 Kan. 176, 181-82, 929 P.2d 153 (1996). Interpretation of any applicable statutes is also a question of law subject to unlimited review. *Ham-*

*ilton v. State Farm Fire & Cas. Co.*, 263 Kan. 875, 879, 953 P.2d 1027 (1998).

*Analysis*

We begin our analysis by stating that the trial court never reached any factual issues concerning the validity of Betty's claims or whether they had been properly preserved or asserted in the Will C. Taliaferro Estate proceedings. This is not an appeal from any portion of a probate proceeding under Chapter 59 of our statutes, and our opinion must not be construed to condone, condemn, or even suggest the proper procedure to preserve and raise issues in such an action. This is a Chapter 60 action in which Betty is the plaintiff and the trusts, their trustees, and the various trust beneficiaries are the named defendants.

Betty's motion raised the limited contention that she is entitled to reimbursement from the T & B Trust for the debts and expenses of Will which she voluntarily paid, and our decision is limited to resolving that question.

In her first argument Betty concedes in her appellate brief that: "Neither the Taliaferro and Browne Trust nor the Will C. Taliaferro Trust . . . provided for the payment of decedent/grantor's last debts and expenses except for the expenses of trustor's last illness and funeral [a reference to the Will C. Trust]." She asserts that the trial court's earlier order requiring the T & B Trust to pay the federal estate taxes and Kansas inheritance taxes of Will's estate is inconsistent with the trial court's denial of her motions for reimbursement. She notes that her spousal share was not subject to taxes. She then reasons that since many of the debts and expenses she voluntarily paid lowered the overall tax by being claimed as deductions for the estate, the refusal to grant her motion for reimbursement resulted in indirectly charging her share of the estate with the taxes in direct violation of the holding of *Jackson*, 217 Kan. 448.

The argument of the T & B Trust is more persuasive. The T & B Trust contends the rulings are not inconsistent because the T & B Trust *was* legally obligated to pay the taxes irrespective of the trust language, and that this was not contested or appealed,

whereas Betty's motion for reimbursement and the trial court's ruling regarding the motion for reimbursement were based on the trust language. In denying Betty's motions, the trial court correctly stated that the T & B Trust document "contains no language which would authorize the expenses sought to be reimbursed by Betty Taliaferro." By its language, the trust did not require or even permit payment of the personal expenses of Will Taliaferro. Any language in the T & B Trust document relating to payment of "expenses, costs, fees" clearly is limited to expenses of the trust.

We agree with the trial court's ruling and the arguments of the T & B Trust trustee. The payment of the taxes by the T & B Trust is an issue totally separate and distinct from the claim for reimbursement. The requirements of *Jackson* were followed. Betty was not required to pay any part of the taxes. When she took it upon herself to pay out of her own funds certain debts and expenses purportedly attributable to her late husband and his last illness and funeral, she did so unilaterally and voluntarily, and for no reason other than her own personal sense of moral obligation. Whether the federal estate and Kansas inheritance taxes were correctly figured and whether the deductions claimed on those taxes were correctly claimed is not at issue in this appeal. That some of the items she paid for may have been claimed as deductions on the estate's federal estate taxes and Kansas inheritance taxes, causing those taxes to be lower, does not mean her share of the estate was "charged with or reduced by" the taxes themselves. Furthermore, the T & B Trust is not authorized or even permitted to make the payments Betty requests, and the trial court properly so held.

Second, Betty asserts in her brief: "The Trial Court Erred When It Ruled, As a Matter of Law, Will C. Taliaferro Could Create a Spendthrift Trust to Avoid Payment of His Lawful Debts and Expenses." Generally speaking, a spendthrift trust is "a trust created to provide a fund for the maintenance of a beneficiary and at the same time to secure the fund against [the beneficiary's] improvidence or incapacity. Provisions against alienation of the trust fund by the voluntary act of the beneficiary or by his [or her] creditors are its usual incidents." *In re Estate of Sowers*, 1 Kan. App. 2d 675, Syl. ¶ 2, 574 P.2d 224 (1977). Betty notes the general rule that one

may not place his or her own property into a trust for his or her own benefit and provide that the funds shall not be subject to the claims of his or her creditors, and may not use such a trust to defeat the lawful demands of those creditors. See *Herd v. Chambers*, 158 Kan. 614, 622-28, 149 P.2d 583 (1944); *In re Estate of Sowers*, 1 Kan. App. 2d 675, Syl. ¶ 7.

K.S.A. 33-101 reinforces this principle in the following terms:

"All gifts and conveyances of goods and chattels, made in trust to the use of the person or persons making the same shall, to the full extent of both the corpus and income made in trust to such use, be void and of no effect, regardless of motive, as to all past, present or future creditors; *but otherwise shall be valid and effective.*" (Emphasis added.)

The T & B Trust does not dispute these general principles regarding a trustor's creation of a personal spendthrift trust, but takes the position they have no application to the present case because the trial court never ruled the T & B Trust was a spendthrift trust and because Betty is not a creditor of Will, his estate, or the T & B Trust.

The trial court did not rule that Will could create a spendthrift trust to avoid the payment of his lawful debts and expenses. In fact, at the hearing on Betty's motion for reimbursement the trial court stated that it never understood either trust to be a spendthrift trust and it was puzzled by Betty's argument in that regard. When the trial court asked for an explanation on the matter, Betty's attorney responded:

"Well, I guess the point I was making was that the probate estate in this matter was insolvent. These [the assets held in the trusts] were the only assets really that the creditors of the decedent could have reached . . . and that is really the point that I was trying to bring up. And I believe that creditors could have pursued these assets once Mrs. Taliaferro had disclosed to them that there were trusts in existence."

Betty's argument is spurious. The trial court never ruled that the T & B Trust was a spendthrift trust, and Betty cannot show that she is a creditor of Will's estate or a creditor of the T & B Trust.

In a law journal Note, *Will Substitutes in Kansas*, 23 Washburn L.J. 132, 150-53 (1983), circumstances are discussed where, after a settlor has transferred personal property into a trust for the set-

tlor's own use, creditors can reach the assets of the trust pursuant to K.S.A. 33-101. Betty has failed, however, to show how the rules applicable to such cases apply to her claim. In her reply brief, Betty stated that it would be a misstatement to characterize her approach as being brought under the theory that she is a creditor, and she described the real thrust of her argument on appeal as being that she should be reimbursed because her payment of many of the debts and expenses benefitted the beneficiaries of the trust by significantly reducing the tax obligation of the estate which the T & B Trust was eventually ordered to pay. At oral argument she changed the focus of her theory and asserted she should be viewed as a creditor of the estate, yet she has still failed to demonstrate on what basis she can claim the rights of a creditor. To recover against the estate, a creditor would have to have filed a demand against the estate and have had such demand allowed, yet there has been no such showing in this case. Nor has it been argued or shown that Betty has subrogation rights to creditors whose claims were allowed or that she has any rights other than those of a volunteer.

Betty's third and final argument regarding the T & B Trust returns to the language of that trust, which she seemingly earlier abandoned. She asserts her claim fell within the language of Section Ten (R) of the T & B Trust, which states:

"[T]he Trustee is expressly authorized, in its discretion:

. . . .

"(R)   To pay any and all expenses, costs, fees (including the Trustee's own fees), taxes, penalties or other charges and, except as otherwise expressly provided herein, to charge the same against the principal or income partly against the principal and partly against the income of the whole or any part of the trust."

Section Twelve of the T & B Trust provides for the payment of reasonable compensation to the trustee for services and reimbursement of expenses and the reference in Section Ten (R) to "the Trustee's own fees" obviously refers to those authorized under Section Twelve.

In attempting to bring her claim within the language of the trust, Betty notes the trial court's statement that "it appear[ed] . . . that the Taliaferro and Browne Trust permits the Trustee to pay ex-

penses *for the benefit of the Trust.*" (Emphasis added). Relying on the trial court's use of the words "benefit of the Trust," Betty asserts that her payment of the decedent's debts and expenses that were later claimed as deductions for federal estate tax purposes "benefitted" the trust by lowering the estate's tax obligation which the T & B Trust was ordered to pay. She believes she should, therefore, under the "clear, unambiguous language of the trust," at least be reimbursed in a sum equal to the amount of tax savings that could be attributed to the claimed deductions since that is the amount by which the T & B Trust was "benefitted."

The language of Section Ten (R) can only be construed to refer to the fees, costs, and expenses of the trust and not to those of Will personally. The payment of federal estate taxes and Kansas inheritance taxes by the trust was in no manner based on Section Ten (R) of the Trust. The T & B Trust's incidental benefit from the action of another cannot be equated with a debt owed or an expense incurred. Moreover, the payment of the expenses specified in Section Ten (R) is purely in the discretion of the trustee, and the trustee did not exercise his discretion in favor of Betty in this case.

These are sad facts of a family in turmoil, but none of Betty's various theories of relief entitle her to reimbursement of the debts and expenses she voluntarily paid, and the trial court was correct in so ruling.

Finally, Betty argues that the trial court erred by concluding that it did not have jurisdiction over the Will C. Trust. The only motions for reimbursement filed by Betty in this action were the November 1998 motion and the December 1998 amended motion, both of which, by their terms, only sought reimbursement from the T & B Trust. While the trustee and beneficiaries of the Will C. Trust were parties to this action, and although the trial court instructed Betty that she could file a motion against the Will C. Trust if she so desired, Betty did not file such a motion, and no ruling was made as to *that* trust's obligations to Betty, if any. The Will C. Trust is simply not involved in this appeal.

Affirmed.